JUDGE LINDSAY
delivered the opinion oe the. court.
These three appeals present the same question.
J. R. and J. P. Ingram, with these appellants as sureties, commenced in 1872 to borrow money from the appellee. The notes were made payable to one or more of the accommodation *59 parties, and by'him or them indorsed to the bank. They were made to run four months, and were from time to time renewed as they fell due. The bank, at the time of the discounting of the first notes and at each and every renewal, retained the interest in advance. The sums so retained were in proportion to ten per cent per annum upon the face of the notes.
The notes last accepted in the way of- renewals were not paid at maturity, and these actions were instituted to enforce their collection.
The sureties pleaded the facts above set out, and insist that the bank, by retaining the said amounts of interest in advance, in effect charged and received interest at a rate greater than ten dollars upon one hundred dollars for a year, and that it thereby violated the 5th section of the act of March 14, 1871 (Session Acts 1871, page 61), and the 4th section of article 2, chapter 60, General Statutes, and forfeited to the borrowers the whole amount of interest paid.
They further claim that it also violated the 30th section of the national currency act of June 3, 1864, and forfeited to the borrowers twice the amount of the interest paid.
They sought to have their claims arising out of those supposed forfeitures set off against the notes sued on, and prayed to be credited by the amounts thus made up.
We need not inquire as to the rights of the parties under the provisions of the act of congress. The forfeitures claimed under said act are highly penal in their nature. The courts of this state have not up to this time undertaken to enforce penalties arising under the laws of the government of the United States, and these cases present no sufficient reason to authorize the inauguration of a new judicial policy upon that subject.
It is undoubtedly true that by retaining out of the sum loaned the full amount of the legal interest that would accrue thereon during the time for which the note is to run, banks are *60 enabled to realize upon their available capital a greater rate of interest than could be realized if the interest was not collected until the note became due; but the practice of thus discounting bills or notes began with the business of banking, and was soon so firmly established that the courts sanctioned it almost of necessity. (3 Parsons on Contracts, page 131.)
This practice must be confined to short paper; and the instrument discounted, or upon which the interest is taken in advance, must be such as will circulate in the course of trade, or such as by statute has been placed upon the footing of that character of paper. (Ibid. 132; Firemen’s Ins. Co. v. Ely, 2 Cowen, 703.)
The deduction of legal interest from the face of the note or bill discounted has always been tolerated in this state; and it was long since held by the Supreme Court of the United States that transactions of that sort are not to be treated as usurious. (8 Wheaton, 354; 3 Peters, 40.)
We find nothing in the legislation of this state upon the subject of interest and usury to take such transactions out of the general rule applied to them by the courts of the United States and of our various sister states. We therefore conclude that neither section 5 of the act of March 14,1871, nor section 4, article 2, chapter 60, General Statutes, entitles appellants to recover the supposed forfeitures claimed in their several answers.
But there is still another view of the case. It is not denied that interest, at the rate of ten per cent per annum, was collected in advance on each and all of the notes indorsed to the bank. By the laws of the commonwealth no more than six per cent interest can be lawfully collected for the loan or forbearance of money, unless it be upon contract, evidenced by a memorandum in writing signed by the party or parties chargeable thereon. (Acts 1871, page 61.) The General Statutes provide that the contract must be “ by memorandum in writing *61 signed by the party or parties chargeable thereon, and not otherwise.”
Note by Reporter. — By an act to amend chapter 60 of the General Statutes, title “Interest and Usury,” approved March 14,1876, the General Statutes are so amended as to change the rate of conventional interest from not exceeding ten to not exceeding eight per centum per annum. (Session Acts, 1876, page 68.)
It is not denied that the borrower may pay and the banks receive interest at the rate of six per cent per annum under oral agreements; but appellants insist that the additional four per cent admitted to have been paid was usury, and claim that the bank can not refuse to credit each note by the excess of interest over six per cent paid on the debt evidenced by it, unless the payments were made under contracts reduced to writing and signed by the parties charged therewith.
Strictly speaking, there were no written memorandums authorizing the bank to collect interest in advance; but the notes signed and delivered to the bank were written memorandums signed by the parties to be charged, and they evidenced the contracts or agreements to pay at maturity to the bank sums of money equal to the principal and the accruing interest, at the rate of ten per cent per annum for the time they were each to run. It follows, therefore, that the contracts touching the payment of interest on the various notes conformed to the spirit and letter of the conventional interest law, and that they were properly upheld by the circuit court.
Consequently the judgments of said court, refusing to allow the defenses relied on by the appellants in the three cases under consideration, must be affirmed.