## Case No. 3,397.

### CROCKER v. FIRST NAT. BANK.

[4 Dill. 358; 3 Am. Law T. Rep. (N. S.) 350; 3 N. Y. Wkly. Dig. 105; 1 Thomp. Nat. Bank Cas. 317; 3 Cent. Law J. 527; 11 Am. Law Rev. 169; 1 Cin. Law Bul. 350; 24 Pittsb. Leg. J. 73.][1]

#### Circuit Court, D. Kansas. 1876.

NATIONAL BANKS — REVISED STATUTES, SECTIONS 5197, 5198, CONSTRUED — RATE OF INTEREST — RIGHT OF ACTION TO RECOVER BACK ILLEGAL INTEREST PASSES TO ASSIGNEE IN BANKRUPTCY —EXTENT OF RECOVERY.

1. A national bank located in Kansas charged and received interest at the rate of eighteen per cent per annum. *Held*, that it was liable, under the national banking act (Rev. St. §§ 5197, 5198), to pay back twice the amount of interest thus received.

[Cited in Markson v. First Nat. Bank, Case No. 9,097; Hill v. National Bank, 15 Fed. 433.]

2. If the person who paid such illegal interest is adjudged a bankrupt, the right of action passes to his assignee in bankruptcy, such assignee being his "legal representative" within the meaning of section 5198 of the Revised Statutes.

[Cited in Wright v. First Nat. Bank, Case No. 18,078.]

3. The amount of the recovery is twice the full amount of interest paid, and is not limited to twice the excess of interest paid over the legal rate.

This is an action by an assignee in bankruptcy, brought in 1875, to recover from the defendant [the First National Bank of Chetopa], a bank organized under the act of congress commonly known as the national banking act, double the amount of interest which he charges was taken from the bankrupts by the defendants upon numerous transactions

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission. 11 Am. Law Rev. 169, contains only a partial report.]

after 1872 and prior to the bankruptcy. The petition states in each count that the interest charged was "a greater rate of interest than was allowed by the laws of the state of Kansas." It is material to inquire what was the law of the state of Kansas in regard to interest, during the period covered by the counts not barred by the statute. To properly understand the Kansas interest law, it is necessary to begin with the General Statutes of 1868 (page 525, c. 51), which contain the following:

"Sec. 2. The parties to any bond, bill, promissory note, or other instrument of writing, for the payment or forbearance of money, may stipulate therein for interest receivable upon the amount of such bond, bill, note, or other instrument, at any rate not exceeding twelve per cent. per annum.

"Sec. 3. All payments of money or property made by way of usurious interest, or of inducement to contract for more than twelve per cent. per annum, whether made in advance or not, shall be deemed and taken to be payments made on account of the principal, and the courts shall render judgment for no greater sum than the balance found due after deducting the payments of money or property made as aforesaid, without interest; nor shall any debtor be deemed in equal wrong on account of having paid, or having agreed to pay, such usurious interest or such inducement, but shall have like remedy and relief in either case.

"Sec. 4. Any person contracting, by promissory note, bill of exchange, bond, or otherwise, to receive a greater rate of interest than that allowed by this act, shall forfeit all interest, and shall recover no more than the principal of such note, bill, bond, or other contract."

These sections clearly limited the rate of interest to twelve per cent. per annum, and punished the creditor who contracted for more with an entire forfeiture of all interest, at the same time rewarding the debtor with a credit upon the principal debt of so much as he might have paid for interest on a usurious contract. This remained the law until June 20, 1872, when sections 2, 3, and 4, quoted, were repealed by the act of February 28th, and the following took effect (Laws 1872, p. 284):

"Sec. 2. The parties to any bond, bill, promissory note, or other instrument of writing, for the payment or forbearance of money, may stipulate therein for interest receivable on the amount of such bond, bill, note, or other instrument of writing: provided, that no person shall recover in any court more than twelve per cent. interest thereon per annum.

"Sec. 3. All payments of money or property made by way of usurious interest or inducement to contract for more than twelve per cent. per annum, whether made in advance or not, shall be deemed and taken to be payments made on account of the principal and twelve per cent. interest per annum, and the courts shall render judgment for no greater sum than the balance found due after deducting the payments of money or property made as aforesaid."

A general denial was filed to the petition, a jury waived, and the cause tried by the court.

McComas & McKeighan, for plaintiff.

John K. Cravens, contra.

DILLON, Circuit Judge. The usurious transaction in respect of which this action is brought occurred after the state statute of June 20, 1872 (Laws 1872, p. 284), went into operation. This statute, as construed by the supreme court of the state, "allowed parties to contract for any rate of interest they might choose, but did not allow the creditor to recover more than the principal and interest at the rate of twelve per cent. per annum." Jenness v. Cutler, 12 Kan. 511, per Valentine, J. On the loans to the bankrupts, the defendant bank contracted for and received interest at the rate of eighteen per cent. per annum. If the debtors had not been adjudged bankrupt, could they have recovered under section 30 of the national banking act? Rev. St. §§ 5197, 5198. If so, does this right of action pass to their assignee in bankruptcy? And if so, what is the extent of the recovery? These are the questions in the case.

1. If the effect of the state statute of June 20, 1872, was to abrogate all rates of interest —if after that enactment no rate of interest exists or "no rate is fixed by the laws of the state" of Kansas—then national banks would be restricted to seven per cent. as the maximum rate they could lawfully charge. Rev. St. § 5197; Tiffany v. National Bank of Missouri, 18 Wall. [85 U. S.] 408. If, however, this was not the effect of that enactment, then twelve per cent. is the maximum legal rate allowed by the laws of Kansas. In either event, the defendant bank charged and received an illegal rate. If bankruptcy had not supervened, it is clear that Marsh & Overhuls, the bankrupts, might, under the national banking act (Rev. St. § 5198), have recovered from the defendant bank twice the amount of interest paid, as therein provided. Indeed, the right of action is yet in them if it is not barred by the two years limitation (Rev. St. § 5198), unless it has passed to their assignee in bankruptcy.

2. The next question is, is the assignee in bankruptcy their "legal representative" within the meaning of the statute? Rev. St. § 5198. It is our opinion that an assignee in bankruptcy is, in respect of such a claim as this, which has injuriously affected and reduced the estate in bankruptcy, and which is to be enforced "by an action in the nature of an action of debt," peculiarly and most appropriately "the legal representative" of the bankrupt. Every reason which, in case of the

death of the debtor, without bankruptcy, would give the right of action to the administrator or executor, as his legal representative, applies with full force to the assignee in bankruptcy, if his estate is during his lifetime administered in a court of bankruptcy. See Tiffany v. National Bank of Missouri, supra; 1 Deac. Bankr. (3d Ed.) 523, 524; Beckham v. Drake, 2 H. L. Cas. 640. In this view, it is unnecessary to determine whether the right of action would vest in the assignee under the bankrupt act (Rev. St. §§ 5044–5047), though it seems not improbable that the provisions of these sections are comprehensive enough to embrace it. Darby's Trustees v. Boatman's Sav. Inst. [Case No. 3,571]; Id., 18 Wall. [85 U. S.] 375.

Under the English bankrupt act, no right of action passes to the assignee for a mere personal tort to the bankrupt, as for assault or libel, but it is otherwise in respect of injuries or torts which result in diminishing the estate of the bankrupt; and the distinction is taken between rights of action where personal suffering or inconvenience is the primary cause of the action (which do not pass), and where pecuniary loss or damage is the primary cause of action, which do pass. 1 Deac. Bankr. (3d Ed.) 522 et seq. This distinction seems to be made in our bankrupt act, which vests in the assignee all such "rights of action."

3. The next question is, whether the recovery shall be for double the whole amount of interest paid, or only double the amount in excess of the legal rate, whether that be seven or twelve per cent. Where an illegal rate of interest is charged, and an action is brought on the contract, the statute declares a "forfeiture of the entire interest," and if the usurious interest has been paid, the statute gives an action to recover back, not simply the excess over the legal rate, but "twice the amount of interest thus paid," that is, paid in pursuance of an usurious contract or transaction.

National banks owe a duty to the public to observe the limitations of the act of congress in respect of the rate of interest—limitations wisely imposed, but in many of the western states, at least, very frequently disregarded. They have privileges enough without usurping others. They have powers enough, without exercising those not conferred, or transcending the limits of their charters. They ought not to become usurers; and if they do, public policy is promoted by an enforcement of the penalties which the statute has denounced. It should be borne in mind that the statute confines the action to the person who has paid the illegal interest, or to his legal representative, thus showing that it was in part its purpose to repair this loss or reimburse his estate—there being superadded, for the purpose of preventing such violations of the law, the infliction of a penalty of twice the amount of interest paid. This penalty was, doubtless, supposed by congress to be no more than would be reasonably sufficient to cover the excess of interest over the legal rate, and costs and expenses of litigation, and at the same time make it more profitable to the banks to obey the law than to violate it.

Judgment will be entered for the plaintiff for $2,219.92, that being twice the full amount of interest paid on the usurious transactions set out in the petition, not barred. Judgment accordingly.

NOTE [from original report]. In Pennsylvania there is no general statute limiting the rate of interest which banks, organized under the laws of the state, may take. A number of such banks, by special charter, are authorized to charge and receive ten per cent. interest—the general legal rate of interest in that state being six per cent. A national bank in that state reserved and received interest at nine per cent. Held (construing Rev. St. § 5197), that it might rightfully contract for interest at the rate of ten per cent. per annum, and that the action against the bank for twice the amount of interest paid could not be maintained. First Nat. Bank of Mt. Pleasant v. Duncan [Case No. 4,804], western district of Pennsylvania, before Strong and McKennan, JJ., June, 1878. Jurisdiction of state courts of actions against a national bank, under section 30 of the national banking act, was asserted and maintained in Ordway v. Central Nat. Bank, 47 Md. 217; S. P. Bletz v. Columbia Nat. Bank [87 Pa. St. 87]. See Missouri River Tel. Co. v. First Nat. Bank [74 Ill.] 217; Newell v. Nat. Bank, 12 Bush, 57. The principal case was cited and followed by Gresham, J., in Wright v. National Bank of Greensburg [Case No. 18,078].