IN THE MATTER OF THE MORTGAGE OF JOSEPH AGOSTINI and others to COLONIAL TRUST COMPANY, a corporation of the State of Delaware.

(*June* 15, 1943.)

RODNEY and SPEAKMAN, J. J., sitting.

*James R. Morford* (of Marvel and Morford) for the petitioners.

*Daniel DePace* and *Eldridge Hood Young* (of Baltimore, Md.) for the defendant.

Superior Court for New Castle County, January Term, 1943.

RODNEY, J., delivering the opinion of the Court:

Because a Court is usually desirous of confining itself within its clear jurisdiction such question will be first considered.

It is quite obvious that when a mortgagor is entitled to repay a mortgage loan obtained by him, and has so repaid it in full as to both principal and interest, that he is entitled either to have the mortgage marked as satisfied upon the record or to have such other steps taken as will remove the lien of the mortgage. It is unnecessary to consider what remedy originally existed in the mortgagor in such cases, for the matter is now expressly covered by *Sections* 3691-3694, *Revised Code* of 1935. The substance of these provisions, except for procedure, may be largely traced to the Act of February 5, 1829 (*Revised Code,* 1829, page 92).

We must now consider the remedy of a mortgagor who may be assumed to be entitled to repay a mortgage and offers to do so in full as to both principal and interest, but the mortgagee refuses to accept a tender, although such tender is actually made and continued in force. To consider this question at this time we must assume that the mortgagors, the petitioners, were on October 21, 1942, entitled to make payment of the mortgage, or tender thereof. The petitioners contend that they were so entitled to make payment, both from the language of the instrument itself and from the fact that the due date of the mortgage was, under the circumstances, an illegal date, and that they were entitled to make payment at the expiration of the longest period from which the discounted loan could be legally made. Both of these contentions are disputed by the respondent, but, solely for the purpose of discussion, we will assume that on October 21, 1942, the petitioners were entitled to make tender of their debt and interest.

This then presents the much vexed question of the effect of an unaccepted tender as affecting the lien of a real estate mortgage. Upon this question the authorities are sharply divided, the division not only arising from the contrasting "common law" and "lien" theories of mortgages, but appearing as well among the adherents to the same

theory. Most of the cases are collected and discussed in an exhaustive annotation in 93 *A. L. R.* 12-81.

At Common Law a mortgage conveyed a fee simple title subject to be divested by performance, by the mortgagor, of the condition of the mortgage upon the day named. This specific day of performance was called the "law day." If the conditions of the mortgage were performed on the "law day" the estate became re-vested in the mortgagor without any reconveyance. When the condition was not met on the "law day" the estate of the mortgagee became absolute, and the title of the mortgagor was divested, and a voluntary reconveyance or bill to redeem was necessary to restore the mortgagor to his former estate. The effect of payment of the mortgage on the law day as discharging the estate of the mortgagee was later extended to the case of tender of payment of the mortgage on the law day. This tender, when properly made on the "law day," was given the same effect as payment itself as a discharge of the estate of the mortgagee or the lien of the mortgage, but, unlike payment, it did not discharge the debt itself.

Many of the American jurisdictions have rejected the common law theory of a mortgage as a conveyance of title, and treat a mortgage as being merely a security for the payment of the debt, the title remaining in the mortgagor as if the mortgage had not been given. Delaware is among these jurisdictions. *Malsberger v. Parsons*, 1 *Boyce* (24 *Del.*) 254, 75 A. 698.

In those jurisdictions in which a mortgage is mere security for the debt the common law term of "law day" has lost much of its significance. Because the mortgage makes no transfer of title and the mortgagor may make payment at any time on or after the due date of the mortgage, the term "law day" is said to be either the actual due date of the mortgage or any day after the day on which the mortgage is due, and until foreclosure. Before the law day, or the day the

mortgage is due, the mortgagor has, in general, no right to make payment of the mortgage, but on that date or subsequently thereto the actual payment of the mortgage debt discharges the indebtedness, and the statute here invoked is a remedy for the satisfaction of the recorded lien after the debt has been paid.

It is at precisely this point that the statute here relied upon must be found inapplicable to give the desired relief.

Where a mortgage is merely a lien upon the land and not a conveyance of the real estate, many cases, following *Kortright v. Cady,* 21 *N. Y.* 343, 78 *Am. Dec.* 145, have held that a tender of the amount due on a mortgage after the said mortgage is payable discharges the lien of such mortgage.

In other jurisdictions also adhering to the lien theory of a mortgage, the principle that a tender discharges the lien has either been expressly repudiated or limited in effect. It is unnecessary to cite these cases in detail. They are collected in 2 *Jones on Mortgages* (8th *Ed.*), *Sec.* 1142; *Hilmes v. Moon,* 168 *Wash.* 222, 11 P. 2d 253, 93 *A. L. R.* 11-81; *Dickerson v. Simmons,* 141 *N. C.* 325, 53 *S. E.* 850, 8 *Ann. Cas.* 363; 36 *Am. Jur.* 906; 41 *C. J.* 497, *et seq.*

In no case, uninfluenced by statute, has mere tender ever been given any effect upon the debt itself. The greatest effect has been the discharge of the lien leaving the debt unaffected or, as expressed in *Kortright v. Cady,* the discharge of those things "incidental and accesorial to the debt." This effect ordinarily springs from the tender itself, regardless whether the tender is or is not kept good.

If, then, the debt itself is not discharged by the tender, what jurisdiction remains under the statute? This statute (*Section* 3694) says "In all cases where mortgages * * * are liens on real estate * * * and the same have been paid * * *" that certain proceedings may be taken.

■  The greatest effect given to a tender of the amount of a mortgage after its due date is to discharge the lien, leaving the debt ·unaffected.   The statute, at least expressly, covers only those cases where the recorded lien remains but the debt has been paid.

■  We. do not think the statute was intended as a method of separating a debt from a lien securing such debt, or of removing a lien from an unpaid debt.   We think the statute was intended solely for the purpose of removing the record evidence of a defunct but recorded lien, after the debt secured by the mortgage lien had been actually paid.   Our thought may be crystallized by an example.   Suppose two mortgages exist upon a  piece of real estate,  and the first mortgage is foreclosed and the property sold.   It is obvious that the lien of the second mortgage has been discharged, but the debt secured by that mortgage has not been affected. We do not think the language of the statute would authorize this Court to have the mortgage marked "paid and satisfied" when the debt had not, in fact, been paid.

■  This proceeding does not involve a plea of tender in a pending litigation.   The mortgagee has not attempted to foreclose the mortgage.   The mortgagors are the moving parties.   They allege the unaccepted tender as constituting the payment of the debt, as required by the statute.   In order that the unaccepted tender made by the petitioners might be considered as continued in force and presumably to operate as a payment of the debt secured by the mortgage, the petitioners on the same day as filing their petition for the satisfaction of the mortgage (December 23, 1942), paid the amount of the tender to the Prothonotary of New Castle County.   This payment was not made pursuant to any statute or rule of Court, or any order of a Judge. ` Without passing upon any effect the payment may have as to any subsequent interest on the mortgage, or, in connection with the tender, as affecting the lien of the mortgage, we do not think

it constitutes payment of the debt secured by the mortgage. within the meaning of the cited statute.

This case is not like *Kronebusch v. Raumin,* 6 *Dak.* 243, 42 *N. W.* 656, cited by the petitioners. There an express statute provided that an obligation is extinguished by an offer of payment and deposit of the money in a bank. In *Crumbly v. Bardon,* 70 *Wis.* 385, 36 *N. W.* 19, 20, the Court held that tender (as distinguished from payment) would not support a statutory action for damages for failure to satisfy a mortgage "after a full performance of the conditions."

In those States, like New York, where a full and complete tender after the due date of a mortgage operates as a discharge of the lien of the mortgage, this effect is usually given whether the tender is or is not kept good. These questions have usually arisen when the mortgagee seeks to foreclose the lien held by him. Even in those states, however, a different rule prevails where the mortgagor is seeking affirmative relief. Then is called into play the familiar maxim that he who seeks equity must do equity, and under such circumstances the tender must be kept good. See *Tuthill v. Morris,* 81 *N. Y.* 94, and cases collected in 93 *A. L. R.* 54.

In the present case, as we have indicated, the petition is filed by the mortgagors in a legal proceeding and not in equity. Our attention has not been drawn to any authority by which the payment to the Prothonotary can be construed as a means of keeping the tender good. It is neither a payment under a common law plea of tender, or a payment into Court by virtue of *Art.* IV, § 25 of the *Constitution.* In both these instances, the payment into Court is made by a defendant in a legal proceeding.

The present petition must be dismissed, but it is quite apparent that we have not felt it proper to consider the le-

gality of the loan, or other important questions suggested to us.