JOSEPH AGOSTINI, ROSE AGOSTINI, CARLO AGOSTINI, and VENDURINA AGOSTINI,

*vs.*

COLONIAL TRUST COMPANY, a corporation of the State of Delaware.

*New Castle, March 2, 1944.*

*James R. Morford,* of the firm of Marvel & Morford, for complainants.

*Daniel De Pace,* for defendant.

PEARSON, Vice-Chancellor: Complainants ask for an injunction ordering defendant to accept a sum tendered by them in satisfaction of their obligation under a note or loan agreement, bond and mortgage. By. the demurrer, several questions are raised. The principal dispute is whether the interest called for by the loan agreement exceeds that permitted by Delaware statutes, and if so, whether defendant should be directed to accept the sum tendered in payment.

On July 19, 1941, complainants executed a document purporting to be a promissory note or loan agreement, the pertinent parts of which read as follows:

"July 19, 1941

"8000.00

"Three Years after date, according to the terms and conditions hereinafter more fully set out, for value received, the undersigned promise to pay to the order of

"Colonial Trust Company

(hereinafter called the Bank) at its office in the City of Wilmington, Delaware, Eight Thousand Dollars ($8000.00) with interest at the rate of six per centum, per annum, having deposited with the bank the following collateral and property, viz:" [Here follows reference to a bond and mortgage given by complainants on the same date, in the principal amount of $8000.00, the mortgage covering certain real estate in New Castle County; after which the agreement continues:]

"The said sum of Eight Thousand Dollars ($8000.00) shall be payable on the expiration of three years from date hereof, payable in monthly portions of Two hundred twenty-two and 22/100 dollars ($222.22) each on the nineteenth day of each month, the first payment to be made on the nineteenth day of August, A. D. 1941; provided, however, that the said debtors shall have the right and privilege of

paying any sum between one hundred dollars ($100.00) and two hundred twenty-two and 22/100 dollars ($222.22) each month, but it is expressly agreed that the difference between the said sums of one hundred dollars ($100.00) and two hundred twenty-two and 22/100 dollars ($222.22), shall be paid and made up at the expiration of each six months hereafter so that the average monthly payments shall amount to the sum of two hundred twenty-two and 22/100 dollars ($222.22);
\* \* \*

"The undersigned debtors agree this day to pay in advance three years interest on the above sum of Eight Thousand Dollars ($8000.00) at the rate of six per centum per annum, and if the above sum of Eight Thousand Dollars ($8000.00), or any balance remaining unpaid, is either paid voluntary [sic] or by operation of the law before the time specified to be paid, there shall be no rebate of interest whatsoever."

The loan agreement, bond and mortgage were delivered, and complainants received from defendant the sum of $6,-560, which sum was arrived at by deducting the amount of three years' interest at the rate of 6% per annum, from the face amount of the loan ($8000 x .06 x 3=$1440; $8000—$1440=$6560). Complainants received, by reason of the note, bond and mortgage, no money, credit or property other than that just stated.

In the period from August, 1941, to September, 1942, complainants made several payments, aggregating $2,622.-24, on account of the loan.[1] On October 21, 1942, one of the complainants offered defendant the sum of $4,336.79, and demanded that defendant accept it in full payment of

---

[1] Dates and amounts of payments on account of the loan:

| "August 11, 1941 | $100.00 |
|---|---|
| Sept. 18, 1941 | 100.00 |
| Dec. 6, 1941 | 300.00 |
| Dec. 13, 1941 | 100.00 |
| Feb. 4, 1942 | 955.58 |
| March 11, 1942 | 444.44 |
| May 8, 1942 | 222.22 |
| June 15, 1942 | 100.00 |
| July 17, 1942 | 100.00 |
| August 15, 1942 | 100.00 |
| Sept. 8, 1942 | 100.00" |

the loan, and of the fee for satisfying the mortgage, and that defendant satisfy the mortgage of record and deliver to complainants the bond and mortgage. Complainants compute this sum in the following manner: (1) they treat $6,560, which was the sum they actually received, as the amount lent or principal indebtedness; (2) they deduct from $6,560 the payments which they made between August, 1941, and September, 1942; (3) they add interest at the rate of 6% per annum computed separately upon each principal balance: first upon the amount lent for the period between the date of the loan and the date of the first payment on account; then upon the resulting principal balance for the period between the first payment and the second payment, and so on; interest on the last such principal balance being computed for a period ending two days after the date of the tender.[2]

Defendant declined the tender. Complainants allege

---

[2] Complainants' computation of the interest on balances of principal, and the resultant amount of the tender is as follows:

| (Period) | | | (Principal Balance) | (Interest) |
|---|---|---|---|---|
| " 7/19/41 to | 8/11/41 | on | $6560.00 — 23 days | $ 25.15 |
| 8/11/41 " | 9/18/41 | " | 6460.00 — 38 " | 40.91 |
| 9/18/41 " | 12/ 6/41 | " | 6360.00 — 79 " | 83.74 |
| 12/ 6/41 " | 12/13/41 | " | 6060.00 — 7 " | 7.07 |
| 12/13/41 " | 2/ 4/42 | " | 5960.00 — 53 " | 52.64 |
| 2/ 4/42 " | 3/11/42 | " | 5004.42 — 35 " | 29.19 |
| 3/11/42 " | 5/ 8/42 | " | 4559.98 — 58 " | 44.08 |
| 5/ 8/42 " | 6/15/42 | " | 4337.76 — 38 " | 27.47 |
| 6/15/42 " | 7/17/42 | " | 4237.76 — 32 " | 22.60 |
| 7/17/42 " | 8/15/42 | " | 4137.76 — 29 " | 20.00 |
| 8/15/42 " | 9/ 8/42 | " | 4037.76 — 24 " | 16.15 |
| 9/ 8/42 " | 10/23/42 | " | 3937.76 — 45 " | 29.53 |

$398.53

"Principal $3937.76
Interest 398.53
Satisfaction fee .50

$4336.79"

that they have continuously kept the tender open for acceptance. In December, 1942, they petitioned the Superior Court to have the mortgage satisfied, and deposited the tendered sum with the prothonotary, claiming a right to relief under a certain statute. After a hearing, that court dismissed the petition on the ground that the statutory remedy asserted was inapplicable in the situation presented. *In re Agostini,* 3 *Terry* (42 *Del.*) 347, 33 *A.* 2d 306. Complainants then brought the instant suit, and upon their application, an order was entered authorizing them to pay to the Register in Chancery the sum of $4,336.79, the amount of the tender, to be held until further order in this cause.

Complainants' position is

"that the loan agreement is usurious and illegal, under *Code Sections* 3101 *and* 4047; that in any event *Code* 4047 is unconstitutional; that even if it were valid, any deduction of more than one year's interest in advance would taint the whole transaction with usury; that the tender, kept good and now paid into court, discharges the lien and is an equitable satisfaction of any valid debt; and that, while no question of anticipation is properly involved, the loan agreement by its term contemplates that the complainants may anticipate monthly payments so long as the defendant is permitted to keep all the advance interest payments."

The grounds of demurrer relied on are that it appears from the bill that the loan is not due and payable until July 19, 1944, and that the amount tendered is insufficient.

The first ground is readily disposed of. It is based upon contradictory and misleading expressions in the agreement concerning the time when the loan is payable. Although the agreement in certain parts states that the principal sum of $8,000 is payable three years from its date, these provisions are so modified by other language that they have a very limited meaning, indeed. They do not mean, as they might normally be understood, that the borrowers were to have the use of $8,000 for three full years, and that they were not obligated to repay it, or any of it, before the

expiration of three years. From other provisions, we find that the borrowers were actually required to make monthly installment payments, none less than $100, so that for each six months' period of the three years following the date of the loan, the average monthly payments would amount to $222.22. Moreover, it was specifically contemplated by the last-quoted paragraph of the agreement that the sum of $8,000, "or any balance remaining unpaid," could properly be paid voluntarily by complainants "before the time specified to be paid", that is, before the dates fixed for the installment payments by which such balance would otherwise be liquidated. In view of the modifying directions, the statements that the loan is payable three years after date do no more than designate a maximum period during which complainants must pay defendants the sum of $8,000, either in defined minimum monthly installments, or in greater amounts at any time before the expiration of three years if complainants should voluntarily so elect. Consequently, there can be no question here, as contended by defendant, of an attempted anticipation of payment before the debt was due.

The next ground of demurrer (insufficiency of the amount tendered) requires a more extended discussion. If the agreement was effective in accordance with its terms, the sum offered was certainly insufficient. But complainants say that the agreement was not so effective, because it provides for a rate of interest in excess of the maximum permitted by the Delaware usury statute (*Rev. Code of Del.* 1935, § 3101). That statute reads, in part, thus:

"LEGAL RATE; USURY; PENALTY:—The lawful rate of interest for the loan or use of money, in all cases where no express contract shall have been made for a less rate, shall be six per cent per annum; and when a rate of interest for the loan or use of money exceeding that established by law shall have been reserved or contracted for, the borrower or debtor shall not be required to pay the creditor the excess over the legal rate and it shall be lawful for such borrower or debtor, at his option, to retain and deduct such excess from the amount of

any debt; and in all cases where any borrower or debtor shall heretofore, or hereafter, have voluntarily paid the whole debt or sum loaned, together with interest exceeding the lawful rate, such borrower or debtor, or his personal representative, may recover in an action against the person who shall have taken or received such debt and interest, or his personal representative, the amount so paid which is in excess of said debt together with interest at the lawful rate, if such action be brought within one year after the time of such payment;   *   *   *."

Obviously the fact that in the agreement something is called "principal", or "rate", etc., does not necessarily determine the character of what is denoted, for the purpose of applying the usury statute.   The following excerpts from *Hubachek's Annotations on Small Loan Laws*, 1938, *pp.* 147-149 express elementary propositions which must be borne in mind:

"The term 'interest' is a device of language by which a formula is expressed in a word.  *  *  *  There are three elements in the formula and each is essential to its proper application.   They are: the amount charged, the amount lent, and the time involved.   When each element has been accurately determined, application of the formula to ascertain the rate of interest charged requires merely the use of elementary arithmetic.  *  *  *

"The amount lent means the exact sum of which the borrower obtains the actual use.   This may not be the amount stated in the loan contract.   Any portion of that stated amount which does not come to the borrower free of conditions which deprive him of its beneficial use, cannot be included in the amount lent for the purpose of computing interest.   One cannot properly pay for the use of something of which one does not have the use.  *  *  *

"The time involved means the exact period for which the borrower has the free use of the amount lent.   Like rent paid for the use of property, the rate of charge for the use of money necessarily depends on the length of time it is used.   The amount of an interest charge, in dollars and cents, is not legally significant until the amount lent and the time involved are known.   Only when all three factors are known can the rate of charge be computed and reduced to per cent per annum for comparison with the rate allowed by law."

Applying these fundamentals, the stated principal of the loan agreement is $8,000, but the amount lent is $6,560.

It was this sum that complainants received, and because of it, they agreed to pay the lender the aggregate amount of $8,000. The amount charged for the loan is $1,440, being the difference between the total sum agreed to be paid by the borrowers, $8,000, and the amount they received, $6,560. The time involved is not a single period because the "amount lent" is to be periodically reduced by the monthly payments. As soon as portions of the "amount lent" are repaid, they cease to be a proper basis for the charge of interest, as that term is used in the statute. Hence, the time involved consists of 36 periods, each applicable to a portion of the "amount lent", and the length of each being determined by the time between the date of the loan and the date when such portion is required to be repaid.

Under any view of the agreement, it purports to exact a charge for the loan of money at a rate of interest in excess of 6% per annum. This follows as an inevitable consequence of each of the following features of the agreement: (1) although the "amount charged" is directed to be computed at the rate of 6% per annum, it is computed upon the sum of $8,000, which is greater than the "amount lent", $6,560 (see authorities ante, which support a different rule in the case of short-term loans); (2) even if the "amount lent" were $8,000, the rate would still be excessive, since the "amount charged" is arrived at by computing interest at the maximum lawful rate upon each dollar of the $8,000 for *three full years,* notwithstanding that the "time involved" is less with respect to all of the "amount lent" except that portion which is included in the 36th installment payment. Compare: *Columbus Industrial Bank v. Rosenblatt,* 111 *Conn.* 84, 149 *A.* 209; 66 *C.J. p.* 205.

Unless justified by some other statute or rule of law, the rate actually called for by the agreement must be held unlawful. In the proceeding before the Superior Court [*In re Agostini,* 3 *Terry* (42 *Del.*) 347, 33 *A.* 2d 306, 308],

defendant contended that the agreement was authorized by what is known as the "Small Loan Act", *Rev. Code, Chap.* 100, § 4045, *et seq.*, particularly, *Section* 4047. Complainants urge numerous reasons in opposition to such a contention. Although it does not appear from the bill that defendant was qualified under *Section* 4047 to make the loan at the rate of interest or charge permitted by it, complainants have in effect conceded by their argument, at least for the present stage of this suit, that it was so qualified. For the purpose of expediting a full and final determination of the case, the effect of the section upon the present state of facts will be considered. It provides:

"LOANS PAYABLE IN INSTALMENTS; AMOUNTS; INTEREST RATE; INVESTIGATION FEE OR SERVICE FEE; NO ADDITIONAL INTEREST OR COMMISSION:—The holder of any Certificate of Registration from the State Bank Commissioner, * * * and also any national bank or State bank or trust company organized under the Laws of this State (without obtaining such Certificate of Registration), shall have the power to lend money to any person, firm or corporation in any sum not exceeding Five Hundred Dollars, to be repaid in periodical instalments taking the obligation of the borrower therefor, with any security that may be acceptable to the lender; provided, however, that any such association, firm, partnership or corporation having a paid in capital which is not subject to withdrawal and which shall exceed Ten Thousand Dollars, may make such loans in amounts to any one borrower in excess of Five Hundred Dollars, but not exceeding ten per centum of the paid in capital stock and surplus of such lender. Any such lender may charge in advance the legal rate of interest of six per cent upon the entire amount of the loan and may make such loan repayable in weekly, monthly or other periodical instalments, with the right to the lender to declare the entire unpaid balance due and payable in the event of default in the payment of any instalment for a period of thirty days, and the lender may also charge an investigation fee or make a service charge of not exceeding two per centum of the amount of the loan. * * *"

The statute authorizes a qualified lender to charge in advance the legal rate of interest upon the entire amount of a loan, and to make the loan repayable in installments. There is no express limitation of the period for which interest may be thus charged in advance. However, it is

clear that unless the period be restricted, the actual rate of interest which could be charged would be shockingly high in cases of loans for relatively long terms. Indeed, if the statute were construed to permit unlimited periods for collections of interest in advance, a lender could charge practically unlimited rates.[3] Such a construction would defeat one of the purposes of the statute, which is to restrict the rates of interest chargeable upon loans permitted by the act. This purpose is apparent from the statute itself. Compare: *State v. Bankers Finance Corporation*, 2 *Terry* (41 *Del.*) 566, 26 *A.* 2d 220. It is also apparent from provisions of *Section* 4049, in the same Chapter of the Code, namely:

"It shall be unlawful for any person, association, firm, partnership, corporation trustee, trustee system, association, or a combination of persons having its principal place of business within or without the State, to * * * solicit, contract or agree with any resident of this State for the loaning of money at a rate of interest or charge in excess of that permitted by this Chapter; * * *.

"Any violation of the last above paragraph, shall be a misde-

---

[3] To illustrate the magnitude of the actual rates which would be permissible and the absurd situations which would be sanctioned under such a construction, we may consider a loan transaction involving a note in the face amount of $300, payable in 200 installments of $1.50 each, at the end of each month for 199 months, the last installment to be payable one day before the expiration of the 200th month; interest, computed at 6% per annum on the face amount, to be deducted in advance for the full period of 16 years, 7 months and 29 days. In such a case, the interest would be $299.95 which, when deducted from the face of the note, would leave 5c as the amount lent. The actual rate charged with respect to each monthly payment would be staggering—the first installment payable (treated as interest on the amount lent) would represent a rate of 36,000% per annum. Of course, by making the last installment payable one day later so that interest would be computed for the full 16 years and 8 months, the amount to be deducted as interest would equal the face amount, leaving nothing for the borrower except the obligation to pay $1.50 a month for 200 months. The significance of these illustrations is not that such extreme cases would probably arise, but that there would be no limit whatever upon the magnitude of the rate of interest chargeable if the statute were construed so that the period for advance interest collections were unlimited.

meanor and subject to the penalties provided by this Section; and in any action for the recovery or re-payment of the money loaned, the lender shall be entitled to recover only the principal sum loaned together with interest at six per cent per annum, less the total payments made on said loan by the borrower;  *  *  *."

These provisions are inconsistent with a construction of *Section* 4047 as authorizing unlimited rates of interest. Moreover, such a construction would go far to make ineffectual *Section* 3101, the usury statute first quoted above. It should be noted that *Section* 4047 authorizes loans of large sums of money and applies to a relatively broad, rather than restricted, class of loans. The maximum amount of such a loan to one individual is 10% of the capital and surplus of the lender.  In many instances, this maximum would also be the maximum which a bank could in any event loan to one individual, unless certain conditions as to collateral security were complied with.  Compare: *Rev. Code,* § 2300.

A limitation of the period for which interest upon the entire amount of a loan may be collected in advance ("bank discount") at the full legal rate, is suggested by the law which developed under general usury statutes fixing maximum interest rates.  *Branch Bank at Mobile v. Strother,* 15 *Ala.* 51; *Crowell v. Jones,* 167 *N.C.* 386, 83 *S.E.* 551; *Ellis v. Terrell,* 109 *Ark.* 69, 158 *S.W.* 957; *Ann. Cas.* 1915*C,* 1153; *Newell v. National Bank of Somerset,* 12 *Bush* 57, 75 *Ky.* 57; *New York Firemen Ins. Co. v. Ely & Parsons,* 2 *Cow.* 678, 703, 704, 7 *N. Y. Com. L. Rep.* 928, 937; 66 *C.J.* pp. 207-209; 27 *R. C. L. pp.* 225-227; *Byles on Bills of Exchange,* 59 *Law Library, pp.* *231, *232; *Chitty on Bills of Exchange, pp.* *107, *108; 2 *Parsons on Notes and Bills, pp.* 421, 422.  These authorities indicate that it has been long and widely recognized that advance collections of interest at the full legal rate, computed upon the face amount of a loan, are usurious in theory for any period of time; but that the common practice among banks and commercial

houses of making such advance collections in the case of short term paper, has been treated as an exception and held not to violate usury statutes (which do not in terms authorize interest collections in advance). Nevertheless, because of the obvious consequences of employing the method of "bank discount" for long periods at the full legal interest rate, the exception has been confined to advance collections for short periods. Clearly within the "short" category are periods not exceeding one year. It is equally plain that a period of three years falls within the "long" category. Although there is reason and authority for restricting the "short" category to periods of one year or less, there is no occasion under the facts here to consider the derivation of a precise line of demarcation.

In the light of the foregoing, it is reasonable to construe the expression in *Section* 4047 "charge in advance the legal rate of interest at six per cent upon the entire amount of the loan" as denoting the well-known kind of charging in advance which has been recognized as proper under general usury laws, that is, for short periods only. This construction by no means renders the provision superfluous. In view of the authorization to make loans repayable in installments, there is grave doubt that advance collections of interest computed on the entire amount of a loan would be permissible unless expressly authorized. Construing the advance collection provision as above indicated permits the accomplishment of the important purpose of the statute to effect a limitation upon rates of interest chargeable. Such a construction is preferable to one which would frustrate this purpose, and lead to unjust, absurd, and mischievous consequences. *Darling Apartment Co. v. Springer,* 25 *Del. Ch.* 420, 22 *A.* 2d 397, 137 *A. L. R.* 803; *Nigro v. Flinn,* 8 *W. W. Harr.* (38 *Del.*) 368, 192 *A.* 685; *Taggart v. George B. Booker & Co.,* 3 *Terry* (42 *Del.*) 386, 28

*A. 2d* 690. The more reasonable construction will be adopted.[4]

Thus, the rate of interest exceeds the maximum lawful rate under *Section* 3101, and the loan is not authorized by Section 4047. It remains to be determined how the rights of the parties are thereby affected. Complainants argue that the agreement is void, citing *Cook v. Pierce*, 2 *Houst.* 499. The usury statute in the *Cook* case is substantially different from *Section* 3101, here controlling. This section prescribes the legal effect of a violation of the maximum lawful rate provisions. Instead of rendering void an agreement which calls for excessive rates, it recognizes the lenders' right to recover a limited amount: the borrower "shall not be required to pay the creditor the excess over the legal rate and it shall be lawful for such borrower or debtor, at his option, to retain and deduct such excess from the amount of any debt." Hence, an indebtedness existed under the loan agreement on October 21, 1942, when complainants' tender to defendant was first made.

Defendant asserts that even though the issues concerning the lawfulness of the rate of interest be decided against it, nevertheless, the sum offered by the complainants in satisfaction of the indebtedness, $4,336.79, was less than the amount then due; and that therefore, the legal incidents and consequences of a valid "tender" do not arise from this offer, and the demurrer should be sustained. Defendant

---

[4] At the argument, defendant's solicitor referred to *State v. Bankers Finance Corporation*, 2 *Terry* (41 *Del.*) 566, 26 *A.* 2d 220, as indicating approval of charges of interest in advance for periods greater than one year. In that case, *Section* 4047 was considered with relation to certain loans. In one instance, interest had been collected for two years, and in the other, eighteen months, in advance. However, the court did not discuss the length of the period of advance interest collection and apparently no question was raised with respect to the meaning of the statute in this connection. In any event, the period here is three years, and obviously not to be treated as "short" within the theory of the authorities cited.

insists that "It is well settled, and it has been the immemorial practice and usage of banks, and other financial institutions, that when a loan is paid periodically the installment payments are first applied to interest due at the time of the particular payment and the balance of such payments is then applied to the reduction of the principal, until the loan has been liquidated." The sum tendered by complainants was computed by a different method (partial payments were applied in reduction of principal, and interest computed upon the original sum of $6,560, and the resulting balances as above described). Defendant arrives at the sum of $4,350.52 as the amount due at the date of the tender, using its suggested method. This method is known as the "United States Rule", and although other methods are sometimes applied (such as, the "Merchants' Rule" which involves the application of partial payments against principal indebtedness), the former seems to be generally accepted in the absence of a special agreement or practice otherwise, and to be properly applicable here. *Virdin's Adm'r. v. Polk's Adm'r.*, 1 *Del. Cas.* 444; 33 *C.J. pp.* 250, 251; *Walton and Finney, Mathematics of Accounting and Finance*, (1922) *pp.* 157, 158.

The sum indicated by defendant appears to be slightly excessive, for defendant computed "ordinary" interest (on the basis of 360 days in a year) instead of "exact" interest (365 days in a year), and has shown no reason why the "exact" method should not be employed. Nevertheless, by either method, the sum due under the "United States Rule" was greater than the amount tendered. The rule is basic and well-established that a tender to be sufficient in law must be in an amount at least equal to the sum due. 62 *C.J. pp.* 660-662; 41 *C.J. pp.* 799, 800; 26 *R.C.L. p.* 639; 36 *Am. Jur. pp.* 912, 913. No facts are alleged which show that a tender of the correct amount was waived or excused. Under these circumstances, I am constrained to find that the tender was insufficient in amount, and hence, ineffectual

as a basis for the relief prayed for in the bill.   For this reason, the demurrer must be sustained.

An order accordingly will be advised.