# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

LIONCAP, LLC,                                    )
                Plaintiff,        )
          v.                              )        C.A. No. N23M-05-036
NVR, Inc.,                                       )
              Defendant.     )

## ORDER

This 12th day of September, 2023, upon consideration of Plaintiff LIONCAP, LLC's ("Plaintiff") Petition Pursuant to 25 *Del. C.* § 2115 to Compel Entry of Satisfaction of Mortgage and to Issue Rule To Show Cause; Defendant NVR, Inc.'s ("Defendant") Answer and Affirmative Defenses; Plaintiff's Memoranda of Facts and Law filed in Support of its Petition; Defendant's August 11, 2023 supplemental correspondence; and Plaintiff's August 15, 2023 Response to Defendant's Letter to the Court, it appears to the Court that:

On August 12, 2020, Plaintiff and Defendant entered into two Lot Purchase Agreements ("LPA") to purchase and develop detached and semi-detached homes on two separate tracts of land in New Castle County, Delaware.[1]  The first tract, "Governor's Glen," includes approximately eighty-seven developable single family

---

[1] *NVR, Inc. v. LIONCAP, LLC  Lion Trust and MCJ Capital Partners, LLC*, Del. Ch., C. A. No. 2023-0779-SEM, Verified Complaint, ¶ 12.  After Plaintiff instituted this action in Superior Court, Defendant NVR filed a Verified Complaint in the Court of Chancery.  This Court has taken judicial notice of what is believes to be uncontested facts as stated in NVR's Verified Complaint filed in the Court of Chancery.

1

detached and semi-detached lots.[2]  Per the LPA, Plaintiff is obligated to develop the individual lots, and then sell three different lots to the Defendant for a previously agreed upon price.[3]  Plaintiff and Defendant also entered a second, virtually identical LPA for a tract known as "Linden Grove," which contained approximately eighty-seven developable single-family detached and semi-detached lots.[4]  Again, Plaintiff was obligated to develop the lots (as described *infra* at fn. 1) and sell three different lots to the Defendant for a previously agreed upon price.[5]

Defendant delivered to Plaintiff a deposit of $150,000 for each LPA and was to pay an additional sum for each tract of land when "certain milestones in the approval and the development process were met."[6]  In exchange for each deposit, on or about December 9, 2020, Defendant recorded a mortgage for $150,000 on each tract of land.[7]  These two mortgages are the subject of the Petition To Compel Satisfaction of Mortgage.

---

[2] *Id.*
[3] *Id.*  Plaintiff's obligation as a developer was, at its own cost and expense, to create "fully and improved building lots."  This included "grading, installing water and sewer mains, post and maintain all forms of financial security as required by government authorities, complete paving of streets, install sidewalks, off-lot curbs and gutters, street lighting and erect street signs, [and] provide underground telephone, electrical and propane gas utility lines, etc."
[4] *Id.*, ¶ 13.
[5] *Id.*
[6] *Id.*, ¶¶ 18, 19.
[7] *Id.*

On April 20, 2023, Plaintiff sent Defendant two Fed Ex packages, both containing a check for $150,000 to satisfy each mortgage.[8] Plaintiff requested, among other things, that Defendant return the original Mortgage Satisfaction Piece to counsel so the document could be recorded with the Recorder of Deeds.

On or about April 25, 2023, Defendant sent Plaintiff's counsel a letter rejecting Plaintiff's tender, refusing to accept the $150,000 payments, and declining to execute the Mortgage Satisfaction Piece.[9]

On May 8, 2023, Plaintiff filed a Petition Pursuant to 25 *Del. C.* § 2115 to Compel Entry of Satisfaction of Mortgage and to Issue Rule to Show Cause.[10] On June 22, 2023, this Court issued an Order For Rule To Show Cause, which was returned August 4, 2023.[11]

On July 28, 2023, the Court received Defendant's Answer and Affirmative Defenses.[12] As to each mortgage, Defendant generally averred that the mortgages speak for themselves, and Defendant conceded "it refused the payments because they were a part of a scheme created by Plaintiff, Red Lion Trust and MCJ Capital Partners, LLC (related and affiliated entities that are commonly controlled and

---

[8] *Id.*, ¶ 27.
[9] Docket Item ("D.I") 4, Exhibit C, April 24, 2023 Letter from Defendant to Plaintiff entitled: Re: 8/12/20 Lot Purchase Agreements for the Red Lion South (aka, Governor's Glen aka Maple Grove) Project (the "Contract") by and between LIONCAP LLC ("Seller") and NVR, Inc. d/b/a Ryan Homes ("NVR").
[10] D.I. 4.
[11] D.I. 15, June 22, 2023 Order for Rule to Show Cause.
[12] D.I. 18. Defendant's Answer and Affirmative Defenses.

owned) to wrongfully cut NVR out of two land deals so that Plaintiff and its cohorts could instead sell their properties for a higher price."[13] Defendant's Answer also raised two affirmative defenses: (a) Plaintiff's failed to state a claim upon which its requested relief can be granted, and (b) Plaintiff's efforts to satisfy the mortgages constitutes an illegal conspiracy to prevent NVR from being able to purchase lots from Plaintiff because it would not pay a higher price for the lots.[14]

On August 1, 2023, Plaintiff submitted a Memorandum of Facts and Law in Support of Petition Pursuant to 25 *Del. C.* § 2115 to Compel Entry of Satisfaction of Mortgage and to Issue Rule to Show Cause.[15] Plaintiff argues the undisputed mortgage payoff amount is $150,000 and neither mortgage contained a provision limiting the Plaintiff's ability to prepay the balance of the mortgages.[16]

On August 4, 2023, a hearing was held to consider the Petition. After the hearing, counsel for both Plaintiff and Defendant supplemented their oral presentations with written submissions. Considering the arguments made at the August 4, 2023 hearing, and the written submissions of counsel in support of their respective positions, for the reasons that follow, the Court will **DISMISS** Plaintiff's Petition.

---

[13] *Id.*, ¶¶ 11, 20.
[14] *Id.*, Affirmative Defenses, ¶¶ 1-2.
[15] D.I. 19, Plaintiff's Memorandum of Facts and Law in Support of Petition Pursuant to 25 *Del. C.* § 2115 to Compel Entry of Satisfaction of Mortgage and to Issue Rule To Show Cause.
[16] *Id.*, ¶ 4-5.

### a. The application of 25 *Del. C.* § 2115.

Plaintiff contends that the Petition, which it filed as a *scire facias sur mortgage* satisfaction, complied with 25 *Del. C.* § 2115, and this Court should compel Defendant to accept payment and register the Mortgage as paid. Plaintiff argues a *scire facias sur mortgage* is an *in rem* proceeding, and as such any defenses raised by Defendant are limited to attacks on the mortgage transaction itself. Plaintiff further claims Defendant's defenses are limited to issues surrounding payment, satisfaction, absence of seal, or plea in avoidance of the deed.

In response, Defendant asserts the lone defense of a plea in avoidance of the deed.[17] Defendant argues, pursuant to the LPAs executed between the parties, Defendant was required to pay a $150,000 deposit and, in exchange and as security for the deposits, Defendant recorded the two mortgages at issue.[18] Defendant claims that earlier in 2023, Plaintiff approached Defendant and claimed the development project was no longer "economically feasible" at the prices previously agreed to in the 2020 LPAs. And, if the parties could not re-negotiate a "higher per lot price," Plaintiff would commence this litigation, cutting Defendant out of the development

---

[17] D.I. 24, Defendant's August 11, 2023 Letter to the Court, at 2.
[18] *Id.*, at 3.

deal.[19] Defendant asserts "Plaintiff's illegal conduct and the claims in the Chancery Court Complaint support the defense of a plea in avoidance."[20]

Upon a review of the record and relevant caselaw, the Court concludes Plaintiff has failed to satisfy the elements of 25 *Del. C.* § 2115. Section 2115 only applies to "mortgages . . . on real estate [which] **have been paid** and the mortgagee or obligee . . . refuses or neglects to enter satisfaction of such mortgage or judgment on the record thereof in the office where the same is recorded or entered."[21] It is undisputed that Defendant did not accept Plaintiff's mortgage payments. This Court can only enter an Order compelling satisfaction of a mortgage, and directing the satisfaction be properly recorded, *after* concluding the evidence provided by Plaintiff demonstrates that the mortgage, with all interests and costs due, has been fully satisfied.[22] Plaintiff has failed to meet this burden.[23]

---

[19] *Id.*

[20] As noted *infra* at fn. 1, on August 1, 2023, Defendant filed a Verified Complaint in the Court of Chancery captioned *NVR, Inc. v. LIONCAP, LLC, Red Lion Trust and MCJ Capital Partners*, LLC, C.A. No. 2023-0779-SEM, seeking specific performance of the Land Purchase Agreements between NVR and the Defendants, Tortious Interference with Contract and Civil Conspiracy. *See NVR, Inc. v. LIONCAP, LLC Lion Trust and MCJ Capital Partners, LLC*, Del. Ch., C. A. No. 2023-0779-SEM, Verified Complaint.

[21] 25 *Del. C.* § 2115(a) (emphasis added).

[22] 25 *Del. C.* § 2115(b).

[23] Plaintiff has also failed to identify any statute or court rule which provides a mechanism by which this Court can compel Defendant to accept payment for a mortgage that is neither currently due nor delinquent.

In *In Re Agostini*,[24] a similar dispute arose where petitioners obtained a mortgage on property from Colonial Trust Company.[25] In *Agostini*, the parties executed a written agreement to pay the mortgage on a set monthly basis over a period of three years.[26] If the petitioners prepaid the mortgage, they were required to pay a sum of money in addition to the original debt owed. Fifteen months later, the petitioners attempted to satisfy the mortgage earlier than agreed without remitting the prepayment penalty.[27] When the petitioners tendered funds to Colonial Trust Company to satisfy the mortgage, the trust company refused the tender.[28] To keep the tender valid, the petitioners then remitted payment to the Prothonotary.[29] In considering the positions of the parties, this Court recited the following in describing the factual and procedural posture in *Agostini*:

> {This dispute] does not involve a plea of tender in a pending litigation. The mortgagee has not attempted to foreclose the mortgage. The mortgagors are not the moving party. They allege the unaccepted tender as constituting the payment of the debt, as required by the statute. In order that the unaccepted tender made by the petitioners might be construed as continued in force and presumably to operate as a payment of the debt secured by the mortgage, the petitioners on the same day as filing their petition for the satisfaction of the mortgage (December 23, 1942), paid the amount of the tender to the Prothonotary of New Castle County. This payment was not made pursuant to any statute or rule of this Court, or any order of a Judge. Without passing upon any effect the payment may have as to any subsequent interest on the mortgage,

---

[24] 33 A.2d 306 (Del. Super. June 15, 1943).
[25] *Id.* at 307.
[26] *Id*.
[27] *Id.*
[28] *Id.*
[29] *Id.*

or, in connection with the tender, as affecting the lien of the mortgage, we do not think it constitutes payment of the debt secured by the mortgage, within the meaning of the cited statute.[30]

The current dispute before this Court mirrors *Agostini's* factual and procedural posture. This matter was not the subject of pending litigation. Defendant, who holds the mortgage, has not sought to foreclose on it. And, the Defendant mortgagee is not the moving party.[31]

In *Agostini*, this Court determined what should be the "remedy of a mortgagor who may be assumed to be entitled to repay a mortgage and offers to do so in full as to both principal and interest, but the mortgagee refuses to accept a tender, although such tender is actually made and continued in force."[32]

Ultimately, applying Section 3694 of the Delaware Revised Code of 1935, which preceded 25 *Del. C.* § 2115 and contains virtually identical statutory language to § 2115,[33] this Court concluded the statute did not consider the mortgage paid if

---

[30] *Id.*, at 310.

[31] Unlike *Agostini*, Plaintiff did not remit funds to the Prothonotary after the trust company refused to accept payment to preserve its tender. But, as discussed *supra*, that makes no difference to the outcome.

[32] *Agostini*, 33 A.2d at 308.

[33] Section 3694 of the Delaware Revised Code of 1935 provides, in pertinent part:
**§ 3694, Sec. 37. Satisfaction of Record of Mortgage or Judgment; Process to Compel Entry of Petition to Superior Court; Rule; Service of; Substituted Service by Publication; When; How; Order of Court; Entry by Recorder or Prothonotary: --**
> In all cases where mortgages or judgments are liens on real estate in this State and the same have been paid and the mortgagee or obligee or their executors, administrators or assigns shall refuse or neglect to enter satisfaction of such mortgage or judgment on the record thereof in the office where the same is recorded or entered, within sixty days after the payment thereof, the mortgagor or obligor or their heirs or assigns may, upon sworn petition to the Superior Court of the county

the mortgagee rejected the tender. Under those circumstances, the mortgage was not paid, and the statute applied only to "cases where the recorded lien remains but the debt has been paid."[34] The Court held:

> We do not think the statute was intended as a method of separating a debt from a lien securing such debt, or of removing a lien from an unpaid debt. We think the statute was solely for the purpose of removing the record evidence of a defunct but recorded lien, after the debt secured by the mortgage lien had been actually paid.[35]

Consistent with *Agostini*, because Defendant rejected Plaintiff's tenders to satisfy the mortgages and Plaintiff cannot demonstrate that the mortgages are satisfied. As a result, this Court cannot direct the mortgages be properly recorded as satisfied pursuant to 25 *Del. C.* § 2115.

---

in which such mortgage or judgment is recorded or entered, setting forth the facts, obtain from such Court a rule on the said mortgagee or obligee or their executors, administrators or assigns, to appear on the day fixed by said Court and show cause, if any they have, why such mortgage or judgment shall not be marked satisfied on the record thereof. Such rule shall be served as provided by law for service of writs of Scire Facias. In case the mortgagee or obligee or their executors, administrators or assigns reside out of the State and cannot be served, or in case the mortgagee or obligee is a corporation which has been dissolved for more than three years prior to the filing of said petition, and for whom no Trustee or Receiver has been appointed, the rule shall be continued and a copy thereof shall be published by the Sheriff in a newspaper of the County once each week for four successive weeks, and upon proof of such advertisement by affidavit of the Sheriff made at the time to which such rule was continued, shall be deemed and considered sufficient service of such rule.

[34] *Agostini*, 33 a.2d at 309.
[35] *Id.*

**b. The application of 10 *Del. C.* § 5061.**

Plaintiff presented his claim for relief, in applying 25 *Del. C.* § 2115, as a *scire facias sur mortgage* satisfaction,[36] and Defendant's post-argument briefing reflects adoption of that position. In doing so, Defendant's potential defenses were limited, because under Delaware law, in a *scire facias sur mortgage* writ, "only those claims or counterclaims arising under the mortgage may be raised in a scire facias sur mortgage foreclosure action."[37]

Title 10 of the Delaware Code, Section 5061 provides the procedure by which a party may issue a writ of *scire facias sur mortgage* to foreclose a delinquent mortgage in the Superior Court.[38] Section 5061 applies when a party breaches "the condition of a mortgage of real estate by nonpayment of the mortgage money or nonperformance of the condition stipulated in such mortgage at the time and in the manner therein provided [in] the mortgage."[39] It has no application to the facts

---

[36] D.I. 19, Plaintiff's Memorandum of Facts and Law in Support of Petition Pursuant to 25 Del. C. § 2115 To Compel Entry of Satisfaction of Mortgage and to Issue Rule to Show Cause, ¶2 (The Petition was filed as a "SCIRE FACIAS SUR MORTGAGE SATISFACTION" pursuant to 25 Del. C. § 2115(a) which provides therein that 'Such rule shall be served as provide by law for service of writs of scire facias.'")) While this statute requires a litigant to **effect service** as provided by law as a writ of scire facias, it does not convert the § 2115 Petition into a writ of *scire facias sur mortgage*, pursuant to 10 *Del. C.* § 5061.

[37] *Lasalle National Bank v. Ingram*, 2005 WL 1284049, at *1 (Del. Super. May 19, 2005) (quoting *Harmon v. Wilmington Trust Co.*, 1995 WL 379214, at *2 (Del. June 19, 1995)). These defenses are limited to issues surrounding payment, satisfaction, absence of seal, or plea in avoidance of the Deed. *Id.*, (citing *Gordy v. Preform Bldg. Components, Inc.*, 310 A.2d 893, 896 (Del. Super. Aug. 13, *1973).

[38] *Wells Fargo Bank, N.A. v. Williford*, 2011 WL 5822630, at *3 (Del. Super. Nov. 17, 2011).

[39] 10 *Del. C.* § 5061.

before this Court, and there is no other execution provision in subchapter IX of Title 10 the Delaware Code which permits a writ of *scire facias sur mortgage* to Compel Entry of Satisfaction of a Mortgage pursuant to 25 *Del. C.* § 2115.

**CONCLUSION**

Plaintiff's Petition, pursuant to 25 *Del. C.* § 2115, to compel entry of satisfaction of the mortgage is **DISMISSED.**

**IT IS SO ORDERED.**

/S/ *Martin B. O'Connor*
Commissioner Martin O'Connor