GEORGE K. HERMAN CHEVROLET, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 92324.   Filed March 8, 1963.

*Stephen H. Clink, Esq.*, and *I. John Snider II, Esq.*, for the petitioner.

*Charles R. Abbott, Esq.*, and *Ralph A. Anderskow, Esq.*, for the respondent.

DAWSON, *Judge:* Respondent determined a deficiency in income tax against the petitioner for the taxable year 1956 in the amount of $8,542.74.

The issues presented for decision are:

(1) Whether the petitioner's right to receive a refund from the General Motors Advertising and Promotional Funds became fixed and the amount thereof ascertainable with reasonable accuracy during 1956 so as to require it to be accrued as income in that year.

(2) Whether the petitioner's method of deducting payments to the General Motors Advertising and Promotional Funds was proper and clearly reflected income.

## FINDINGS OF FACT.

Some of the facts were stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by reference.

George K. Herman Chevrolet, Inc. (referred to herein as the petitioner), is a franchised Chevrolet and Buick dealer located in Ravenna, Mich. The company was incorporated under the laws of the State of Michigan on October 6, 1953. For almost 3 years prior to that time the business was operated as a sole proprietorship by J. Paul Herman. Upon incorporation the petitioner acquired all the assets of the proprietorship and continued to operate the business. The sole stockholder is J. Paul Herman.

Since the incorporation the petitioner has maintained its books and records and prepared its Federal income tax returns on an accrual method of accounting and used a calendar year accounting period. Its Federal income tax return for the calendar year 1956 was filed with the district director of internal revenue, Detroit, Mich.

Pursuant to dealer selling agreements entered into between the petitioner and the Chevrolet and Buick Motor Divisions, the petitioner was required to contribute to the Chevrolet and Buick Advertising and Promotional Funds a fixed dollar amount per car purchased from them. These advertising and promotional funds were administered, controlled, and operated by General Motors Corp. for the benefit of the dealers and the material operational facts with respect to each were identical. Although dealers were requested to submit suggestions as to the effectiveness of the advertising programs, there were no limitations on the amount that General Motors could, in its sole judgment, expend from the funds.

The Chevrolet Fund was handled by the Campbell Ewald Advertising Agency and the Buick Fund was handled by the Kudner Advertising Agency. Dealer account records were kept by both agencies. These cards showed the various advertising expenditures made each month on behalf of the dealer, the contributions of the dealer, and the accumulated balance in the fund at the end of each month. Information regarding the expenditures for each month was known to the advertising agencies not later than the 20th day of the following month. The number of cars delivered during the month was provided to the advertising agencies. Thus the approximate balance in the fund at the end of each month was also known by the 20th day of the next month.

During the calendar year 1956, as well as in 1954 and 1955, the petitioner's accounting practice with respect to the advertising and promotional funds was as follows: Upon receipt of an automobile from General Motors a prepaid advertising account was debited

with the amount petitioner was obligated to pay to the advertising and promotional funds. On the sale of an automobile an advertising expense account was debited, and prepaid advertising credited, with the amount that had been previously debited to the prepaid advertising account at the time the car sold was purchased by the petitioner. The amount in the advertising expense account was deducted by petitioner as advertising expense on its Federal income tax returns.

By letter dated November 29, 1956, the petitioner was advised by General Motors Corp. that dealer contributions to the advertising and promotional funds would terminate as of November 30, 1956, and the unspent balance, if any, of the petitioner's contributions would be refunded to it.

Under the terms of the dealer selling agreements prior to December 1, 1956, the petitioner had no right to a refund of a credit balance in the advertising and promotional funds until the agreements were terminated. Consequently, the dealer selling agreements were amended effective December 1, 1956, to provide for a refund of the unspent balance in the petitioner's account as of November 30, 1956. The funds continued to exist until the refund was actually made to the petitioner. It was the customary practice of General Motors to provide yearend statements of the balance in the funds which showed the amount of dealer contributions as well as expenditures.

Even though the petitioner had no right to demand a refund before December 1, 1956, dealers were permitted to make application to zone offices of General Motors for withdrawal of amounts from the funds. Such requests were forwarded to the headquarters office of the division concerned where they were evaluated in terms of the size of the balance, the length of time over which the balance had been accumulated, the amount of advertising placed for the dealer, and definite and projected advertising commitments. The division office then made a recommendation to the assistant advertising manager of General Motors, who alone had the authority to approve or disapprove the dealer's request for withdrawal of money from the funds. In fact, the petitioner by letter dated September 28, 1955, addressed to Chevrolet Flint Assembly, requested $5,000 from the Chevrolet Fund. The request was granted and the amount was received by the petitioner in 1956 and included in income for that year.

Petitioner made no inquiry in the year 1956 to determine the amount it was entitled to receive as a refund from the Chevrolet and Buick Advertising and Promotional Funds. In February 1957 the petitioner received a refund from General Motors Corp. in the sum of $17,840.57, which consisted of $15,444.93 from the Chevrolet Fund and $2,395.64 from the Buick Fund.

In 1956, upon termination of the advertising and promotional funds, the petitioner debited the total amount remaining in its prepaid advertising account to advertising expense. In its 1956 Federal income tax return, which was received by the district director on March 14, 1957, the petitioner deducted the amount of $22,200.17 as "Advertising: General Motors Participation." The petitioner likewise deducted as advertising expense on its 1954 and 1955 income tax returns items designated "Advertising: General Motors Participation." A tax benefit was received by the petitioner by reason of such deductions of advertising expense in each of the years 1954, 1955, and 1956.

The amounts of the petitioner's refunds from the Chevrolet and Buick Advertising and Promotional Funds were determinable with reasonable accuracy by the two advertising agencies prior to December 31, 1956. Upon diligent inquiry the petitioner could likewise have determined with reasonable accuracy the amount of the refund to which it was entitled from each of the funds.

In his notice of deficiency the respondent determined that the amount of the refund was includable in income for the taxable year 1956, thus resulting in the asserted deficiency of $8,542.74 for 1956 and overassessments of $737.45 and $4,083.36 for the years 1955 and 1957.

## OPINION.

Petitioner first contends that the refund of the unspent balance in the Chevrolet and Buick Advertising and Promotional Funds was not accruable as income for the taxable year 1956 because the amount thereof could not be determined with reasonable accuracy in that year. The respondent takes the opposite position by arguing that the petitioner, as an accrual basis taxpayer, was required to accrue the amount of the refund as income in 1956 instead of when it was received in 1957.

Section 446, I.R.C. 1954, provides that taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books. With respect to the accrual method of accounting, section 1.446–1(c)(1)(ii), Income Tax Regs., provides:

(ii) *Accrual method.* Generally, under an accrual method, income is to be included for the taxable year when all the events have occurred which fix the right to receive such income and the amount thereof can be determined with reasonable accuracy. Under such a method, deductions are allowable for the taxable year in which all the events have occurred which establish the fact of the liability giving rise to such deduction and the amount thereof can be determined with reasonable accuracy. The method used by the taxpayer in determining when income is to be accounted for will be acceptable if it accords with generally recognized and accepted income tax accounting principles and is consistently used by the taxpaper from year to year.

On this record our analysis of all the evidence convinces us that the amount of petitioner's refund was ascertainable with "reasonable accuracy" prior to December 31, 1956. Several cases hold that, once a right to receive income accrues and all events which fix the amount have occurred, an accrual basis taxpayer must report the income in the year the right accrued despite the necessity for mathematical computations or ministerial acts. *Continental Tie & L. Co.* v. *United States*, 286 U.S. 290 (1932); *Cappel House Furnishing Co.* v. *United States*, 244 F. 2d 525 (C.A. 6, 1957); and *Marquardt Corporation*, 39 T.C. 443 (1962). Certainly all events occurred in 1956 which fixed the right to receive the refund here involved. This is not disputed by either party.

We are not persuaded by the petitioner's argument that the amount of the refund could not have been determined with "reasonable accuracy" in 1956. While the word "accuracy" means exactness or precision, when used with "reasonable" it implies something less than an exact or completely accurate amount. Without attempting to attach any definite or restrictive meaning to the words "reasonable accuracy," which might hinder both taxpayers and the Commissioner of Internal Revenue, we think it is sufficient to say that the approximate amounts in the Chevrolet and Buick Funds were ascertainable prior to December 31, 1956. See *Patrick McGuirl, Inc.* v. *Commissioner*, 74 F. 2d 729 (C.A. 2, 1935), certiorari denied 295 U.S. 748. This is borne out by the testimony of the witnesses from the advertising agencies who maintained the dealer accounts. They testified, as did a representative of the Chevrolet advertising office, that if the petitioner had made an inquiry before December 31, 1956, they not only could, but would, have given a reasonably accurate estimate of the amounts of its refunds. One witness testified that he could have estimated the amount of the balance in petitioner's Chevrolet account as of November 30, 1956, within $2. The witness who testified about the Buick account said she could have determined the exact amount of the advertising expenses attributable to petitioner's account, leaving as the only variable the amount of payments the petitioner would have made to the fund during the month of November, 1956. That figure was, of course, already available to petitioner because it could be determined by the number of cars it purchased in November from the Buick Division of General Motors. Even the most conservative estimate of 90 percent of petitioner's balance is reduced to an almost completely accurate figure when the variable factor just mentioned is considered.

As noted in our Findings of Fact, the petitioner made no inquiry to determine, nor any effort to estimate, the amount of the refunds to which it became entitled. As an excuse for not doing so, the petitioner offers evidence that *if* all the Chevrolet and Buick dealers *had*

requested this information, the advertising agencies would have been burdened to the point of having to refuse to provide such information to individual dealers. An argument based upon this supposition is weak and merits little consideration. We are not inclined to allow the petitioner, through its own inaction or inadvertence, to disregard this income which was properly includable in 1956. Moreover, we believe the petitioner was under a duty to ascertain the amount to be refunded so that it could be accrued as 1956 income. The failure of petitioner to bring information concerning the termination of the advertising funds to the attention of its accountant is hardly justification for not including it. Cf. *Harrisburg Steel Corporation* v. *United States*, 142 F. Supp. 626 (M.D. Pa. 1956), which indicates that knowledge is not a "necessary ingredient in the ascertainment of the time of income accrual for tax purposes." We are even less impressed by petitioner's alleged difficulties in estimating the amount of its refund since it chose to ignore the actual receipt of the refund in February 1957, for the purposes of its 1956 income tax return which was not filed until March 14, 1957.

When an item accrues is largely a question of fact. We think the facts here support the respondent. The duty and the ability to make a reasonably approximate estimate of the refund are the determining factors, not the abstruse niceties of accounting practices urged upon us by the petitioner. Cf. *Patsch* v. *Commissioner*, 208 F. 2d 532 (C.A. 3, 1953), affirming 19 T.C. 189 (1952); *Charles F. Dally*, 20 T.C. 894 (1953), affd. 227 F. 2d 724 (C.A. 9, 1955). Accordingly, we conclude that the amount of the refund was accruable as income in the year 1956.

Alternatively, the petitioner asserts that, if the amount of the refund was accruable in 1956, then the balance on hand in each advertising fund for prior years could also have been determined with the same degree of accuracy and therefore should have been accrued. To accomplish this end the petitioner seeks to impeach its accounting system, deny its advertising expense deductions, and proffer a hypothetical accounting technique which it alleges would have shielded it from the legal impact of its actual method. This alternative position was raised in an amended petition filed at the commencement of the hearing in this case.

Petitioner alleges in its amended petition that it treated its payments to the Chevrolet and Buick Advertising and Promotional Funds on a cash basis in accordance with General Motors accounting instructions. That this was not the case can be seen from the provisions of General Motors Standard Accounting System Manual as well as the testimony of the petitioner's accountant. The advertising expense account was not debited when payments to the funds were made but

only when a car was sold by petitioner. This method was in keeping with the accrual concept of associating expenses with the income to which they related. The technique established by General Motors and followed by petitioner is as reasonable and accurate a method as could be devised.

This theory seems to be predicated upon the contention that at the end of each year prior to 1956 the petitioner had a right to a refund of any credit balance which existed in its advertising account at the close of such year. From this the petitioner argues that its deductions in those years were overstated and that the balances in the funds at the end of those years should have been included in its income. This is disputed by the evidence because the petitioner did not, and could not, establish that prior to December 1, 1956, it ever had any fixed and unrestricted right to receive a refund of any amount from the advertising and promotional funds.

The existence of a contingency in the taxable year with respect to the collectability of income generally prevents accrual. *Foster Wheeler Corporation*, 20 T.C. 15 (1953). Since the termination of dealer contributions was not a condition which entitled the dealer to a refund under the terms of the original selling agreement, it was necessary for the parties to formally modify that agreement to provide, for the first time, for such a right in the dealer. Thus, it was not until the General Motors' letter of November 29, 1956, and the duly executed supplement to the dealer selling agreement effective December 1, 1956, that the petitioner obtained any right to the unspent portion.

The petitioner attempted to establish that prior to November 29, 1956, it had a right at all times to the unspent balance. In this connection it offered evidence as to the withdrawal of $5,000 in 1956. However, this was a single permissive withdrawal and cannot be construed as a waiver or amendment of the express terms of the dealer selling agreement. On the contrary, the testimony of Harold E. Savage, Jr., of the Chevrolet Motor Division shows the sole and exclusive control which General Motors exercised over the advertising expenditures and the distribution of the money in the funds. In requesting such a withdrawal, the petitioner was merely seeking a voluntary waiver by General Motors of its rights under the dealer selling agreement without any review of an adverse decision by General Motors being available to it.

The respondent does not challenge the propriety of the advertising expense deductions taken by the petitioner. Significantly, it is the petitioner who now complains that its accounting practices did not clearly reflect income. While it was quite willing to avail itself of

these deductions in prior years, the petitioner now asks us to disregard what it actually did in favor of what it might have done. This we shall not do.

An otherwise proper deduction should not be disallowed in the year it was paid or incurred because of the existence of a possibility that at some future date the taxpayer might receive a reimbursement therefor. *Electric Tachometer Corporation,* 37 T.C. 158 (1961).

Furthermore, the petitioner's theory that it should have deducted the actual cash expended from the funds by General Motors during each calendar year overlooks the fact that the year end statements furnished by General Motors did not reflect what portion of the amount designated as "Balance in Advertising Fund to Date" was contractually committed to advertising. It would appear that such commitments would distort the petitioner's hypothetical treatment of the account. Cf. *Waring Products Corporation,* 27 T.C. 921 (1957); *Consolidated Apparel Co.,* 17 T.C. 1570 (1952), affirmed in part and reversed in part on other issues 207 F. 2d 580 (C.A. 7, 1953). This petitioner, as in *Consolidated Apparel,* committed certain amounts to advertising and its loss of control and possession of the money committed gave rise to a proper deduction for advertising expense in the amount committed without regard to the disposition or handling of such funds by General Motors.

Petitioner cites *Commissioner* v. *Hansen,* 360 U.S. 446 (1959), for the proposition that it ought to have included refunds in income in taxable years prior to 1956. We think reliance on the *Hansen* case is misplaced. The principal distinction between *Hansen* and the instant case is the distinction between income and expense. Here the purpose of the advertising funds was to provide advertising services to the petitioner. Certainly the expenditure of the money in the funds was for the petitioner's benefit, but such expenditure would not result in taxable income to petitioner; whereas the use of the money in the dealer reserve to satisfy the contingent liability of *Hansen* would have resulted in income to him, assuming it had not not been previously taxed. The advertising funds in this case had no income aspects except for the remedial purpose of preventing a tax windfall at the time the petitioner received the right to a refund of amounts it had previously deducted as advertising expense.

On this issue we hold that the petitioner's consistent method of deducting payments to the advertising and promotional funds was proper and clearly reflected income so that when its right to receive a refund became fixed in 1956 the amount thereof was accruable as income in that year.

*Decision will be entered for the respondent.*