COMMISSIONER OF INTERNAL REV-
ENUE, Petitioner,

v.

Morton LIFTIN and Sylvia Liftin,
Respondents.

No. 8736.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 8, 1963.

Decided April 29, 1963.

Michael I. Smith, Atty., Dept. of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and John B. Jones, Jr., Attys., Dept. of Justice, on brief), for petitioner.

Morton Liftin, Washington, D. C., for respondents.

Before SOPER, HAYNSWORTH and BRYAN, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge.

■ Gain was not realized by the respondent taxpayers, the Tax Court has decided, in the discount of certain second mortgage monthly payment notes until after the cost of a note or notes was fully restored, either through payments or foreclosure. The Court rejected the determination of the Commissioner of Internal Revenue that the discount had been received in part by the taxpayers in each of the monthly payments. A petition by the Commissioner for review of this decision is before us.

■ Our judgment is that the petition should be denied.* The Tax Court's redetermination was based upon the fully warranted and pivotal factual finding: that, as asserted by the taxpayers, the notes were "highly speculative" and "the amount of realizable discount gain",

---

* Judge SOPER died before this opinion was written, but it embodies the view he expressed in conference.

therefore, remained uncertain until collections on the principal of the notes exceeded their cost to the taxpayers.

The notes were purchased by the taxpayers at various times during 1953 through 1956 at discounts running as high as 45% of the face value. Both interest and principal were included in each monthly payment. Generally, the notes were secured by a second lien—deed of trust or mortgage—upon residential property in Maryland, Virginia or the District of Columbia. They represented the unpaid balance of the purchase price of the properties, having been acquired by taxpayers from various builders, dealers and brokers.

No part of any instalment, except for accrued interest, was reported as realized gain in 1954, 1955 or 1956—the tax years here involved—while the cost of the note was still uncaptured. But the Commissioner prorated each instalment, after deduction of interest, between curtail of principal and discount, allotting to the latter the same percentage of the payment as the total discount was of the face of the note. On this basis taxpayers were assessed the deficiencies which they successfully assailed in the Tax Court.

There was, in our opinion, evidence aplenty for the critical finding of the Tax Court. As concisely put in its opinion, the proof was this:

"That the notes were highly speculative is evidenced by the substantial discounts (up to 45 percent) at which they were purchased, and the quality of the security which was junior to a first deed of trust (up to 60 to 80 percent of the selling price of the property). The evidence is that makers of the notes had but small equities in the properties covered by the deeds of trust because of their small cash payments to the sellers. When purchasing notes * * * [taxpayers] gave consideration to the length of time the loan was to run, to the holder's equity in the property, sometimes to his credit standing, and generally to the location and condition of the property covered by the trust deed after what he called 'an outside inspection.' During the few years in question about 19 of the 84 notes were disposed of, about half of them were disposed of by payment in full while the other half were disposed of by foreclosure, the acceptance by the * * * [taxpayers] of a deed, or the acceptance by the * * * [taxpayers] of less than face for an early payoff. It was * * * [taxpayers'] experience that the latter half of the notes so disposed of resulted in his receiving less than the face value of the notes."

Of course, income must be reported in the taxable year in which it is received according to the taxpayers' method of accounting—here the calendar year and a cash basis. 26 U.S.C. § 451(a); Healy v. Commissioner, 345 U. S. 278, 281, 73 S.Ct. 671, 97 L.Ed. 1007 (1953). But likewise it is, of course, true that there is no gain constituting income until the investment has been recovered in full. Doyle v. Mitchell Bros. Co., 247 U.S. 179, 185, 38 S.Ct. 467, 62 L.Ed. 1054 (1918); Willhoit v. Commissioner, 308 F.2d 259, 263–264 (9 Cir. 1962). However, where no reasonable doubt exists in this prospect, the instalment payments required by the obligation should be allocated in just part to the gain contemplated upon full performance of the contract. In the instant case the Tax Court has fairly weighed these principles:

"Where a taxpayer acquires at a discount contractual obligations calling for periodic payments of parts of the face amount of principal due, where the taxpayer's cost of such obligations is definitely ascertainable, and where there is no 'doubt whether the contract[s] [will] be completely carried out' (Hatch v. Commissioner, * * *, [190 F.2d 254, 257 (2 Cir. 1951)]), it is proper to allocate such payments, part to be considered as a return of cost and part to be considered as the receipt of discount income; but, conversely,

where it is shown that the amount of realizable discount gain is uncertain or that there is 'doubt whether the contract [will] be completely carried out,' the payments should be considered as a return of cost until the full amount thereof has been recovered, and no allocation should be made as between such cost and discount income."

This formula, we think, is altogether sound. Willhoit v. Commissioner, supra, 308 F.2d 259 (9 Cir. 1962); Phillips v. Frank, 295 F.2d 629 (9 Cir. 1961). Its application here warrants the decision of the Tax Court.

Affirmed.