JUDITH SCHNEIDER, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 8040-73—8043-73, 8063-73, 8104-73.    Filed October 9, 1975.

[1] The following cases are consolidated herewith: Judith Schneider, docket Nos. 8040-73 and 8041-73; Berton Schneider, docket Nos. 8043-73 and 8104-73; Robert J. and Toby Carr Rafelson, docket Nos. 8042-73 and 8063-73.

*Hilbert P. Zarky,* for the petitioners.
*Jonathan A. Brod,* for the respondent.

20

22

OPINION

## 1. *Allocation of Income under Section 446*

The cash receipts and disbursements method of accounting used by Raybert is one of the acceptable accounting methods prescribed by section 446(c).[5] Since the payments under "Easy Rider" statements Nos. 9 and 10 and "The Monkees" annual statement for the year ended July 23, 1970, had not been received when Raybert was liquidated on May 23, 1970, petitioners did not include those payments in the corporation's

_____

[5] SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING.

(c) PERMISSIBLE METHODS.—Subject to the provisions of subsections (a) and (b), a taxpayer may compute taxable income under any of the following methods of accounting—

    (1) the cash receipts and disbursements method;

    (2) an accrual method;

    (3) any other method permitted by this chapter; or

    (4) any combination of the foregoing methods permitted under regulations prescribed by the Secretary or his delegate.

final taxable period. Respondent argues that prior to its liquidation, Raybert had "earned" the full amount of the payment on "Easy Rider" statement No. 9 and a proportionate part of the payments on "Easy Rider" statement No. 10 and "The Monkees" annual statement. Relying upon section 446(b),[6] respondent seeks to include those payments in Raybert's taxable income for its final taxable period by recomputing Raybert's income under the accrual method of accounting.

Petitioners vigorously deny that Raybert, no longer in existence when the payments were received, had "earned" any of the disputed amounts attributable to the "Easy Rider" and "The Monkees" payments. They maintain that neither the accrual method of accounting nor any other recognized accounting method would include these payments in Raybert's income, and they argue that, within the meaning of section 446(b), respondent's determination distorts rather than "clearly reflect[s]" the corporation income for its final taxable period.[7]

We are thus presented with the often-litigated question of whether payments received by the shareholders of a liquidating corporation with respect to assets distributed in liquidation are properly taxable to the corporation as income in its final taxable period or are properly taxable to the shareholders. See, e.g., *Idaho First National Bank v. United States*, 265 F.2d 6 (9th Cir. 1959); *Standard Paving Co. v. Commissioner*, 190 F.2d 330 (10th Cir. 1951), affg. 13 T.C. 425 (1949); *Jud Plumbing & Heating v. Commissioner*, 153 F.2d 681 (5th Cir. 1946), affg. 5 T.C. 127 (1945);[8] *Susan J. Carter*, 9 T.C. 364 (1947), affd. 170 F.2d 911 (2d Cir. 1948). The rule to be gleaned from these cases is that a

---

[6] Sec. 446(b) provides as follows:

(b) EXCEPTIONS.—If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income.

[7] Although the notice of deficiency reflects that sec. 482 is an alternative ground for the determination, respondent apparently abandoned this point on brief. Significantly, the notice of deficiency does not purport to "allocate" the income between any two parties but merely seeks to tax such income to Raybert. See *South Lake Farms, Inc.*, 36 T.C. 1027, 1042 (1961), affd. 324 F.2d 837 (9th Cir. 1963).

[8] The legal premise of these cases has been expressed as follows *(Jud Plumbing & Heating v. Commissioner*, 153 F.2d 681, 684 (5th Cir. 1946), affg. 5 T.C. 127 (1945)):

"it is a fundamental concept of taxation that income is chargeable to him who earns it, * * * * * *

"A corporation being a separate legal entity, its net earnings, whether ascertained or not, belong to it, * * * and this liability cannot be discharged by the simple expedient of dissolution and the turning over of all its assets, including current and unreported income, to its sole stockholder, * * *"

corporation is taxable on income which was "earned," or "accrued," or "realized," prior to its liquidation. Whether the words used are "belonged to," "earned," or "accrued," they all refer to "a taxpayer's *fixed and determinable rights* in a certain amount of income." (Emphasis supplied.) *Shea Co.*, 53 T.C. 135, 156-157 (1969).

The rule, while easily stated, is not so easily applied to given factual situations. Application of the rule is guided by the fundamental principle that: "The dominant purpose of the revenue laws is the taxation of income to those who earn or otherwise create the right to receive it." *Helvering v. Horst*, 311 U.S. 112, 119 (1940); see *Williamson v. United States*, 155 Ct. Cl. 279, 283-287, 292 F.2d 524, 527-529 (1961); *Jud Plumbing & Heating, Inc.*, 5 T.C. at 133. This pervasive "purpose" has led courts to allow respondent considerable discretion under section 446(b) to apply a method of accounting to the liquidating corporation's final taxable period which accurately reflects the reality of who earned or realized the income in question. See *Idaho First National Bank v. United States, supra* at 9; *Standard Paving Co. v. Commissioner,* 190 F.2d at 332; *Floyd v. Scofield,* 193 F.2d 594, 596 (5th Cir. 1952). The issue is basically factual, and each case turns on its own facts.[9]

While we recognize that section 446(b) gives respondent broad discretion, we sustain respondent's position only with respect to the payment under "Easy Rider" statement No. 9. The other disputed payments are not taxable to Raybert.

(a) *"Easy Rider" statement No. 9.*—The "Easy Rider" distribution agreement provided that Columbia would account on a monthly basis for all moneys payable to Raybert. The amounts payable to Raybert were determined by the difference between gross receipts from the picture and the allowable deductions for expenses and Columbia's fees for its services. All the relevant figures were computed on a monthly basis, and Raybert was entitled to a payment only if the gross receipts exceeded permissible deductions during the month.

---

[9] The law is settled that the Commissioner has authority under sec. 446(b) to recompute an item of a liquidating corporation's income under the accrual method of accounting even though the corporation has used the cash method in computing its income. See, e.g., *Williamson v. United States,* 155 Ct. Cl. 279, 287, 292 F.2d 524, 530 (1961); *Idaho First National Bank v. United States,* 265 F.2d 6, 9 (9th Cir. 1959); *J. Ungar, Inc. v. Commissioner,* 244 F.2d 90 (2d Cir. 1957), affg. 26 T.C. 331 (1956); *Floyd v. Scofield,* 193 F.2d 594 (5th Cir. 1952).

The month of April 1970, covered by statement No. 9, had expired prior to Raybert's liquidation, and Raybert's right to its percentage of the net proceeds under the "Easy Rider" agreement was subject to accurate computation. By that date, all the events had occurred which fixed the amounts receivable from Columbia's right to rent, lease, license, exhibit, distribute, or otherwise dispose of the picture and prints thereof. Similarly, by that date, all expenses payable on account of those receipts were subject to determination with reasonable accuracy.

Thus, at the time of the liquidation, all the events necessary to fix the net amount earned during that period had occurred. Raybert had done everything necessary to perfect its right to the income; only the ministerial act of computation remained to be done. Cf. *Continental Tie & L. Co. v. United States*, 286 U.S. 290, 295 (1932); *Marquardt Corp.*, 39 T.C. 443, 457 (1962). We think Raybert's rights were sufficiently fixed and determinable to justify respondent's allocation to Raybert of the amount ultimately received pursuant to statement No. 9 as a means of clearly reflecting Raybert's preliquidation income. See *Jud Plumbing & Heating v. Commissioner*, 153 F.2d at 684; *Standard Paving Co. v. Commissioner*, 190 F.2d at 332-333; *Commissioner v. Kuckenberg*, 309 F.2d 202, 207-208 (9th Cir. 1962), affg. on this issue 35 T.C. 473 (1960).

Petitioners' argument that they did not know the amount payable under statement No. 9 does not aid their cause. Under section 1.446-1(c)(1)(ii), Income Tax Regs., income is includable in taxable income for the year when "all the events have occurred which fix the right to receive such income and the amount thereof can be determined with reasonable accuracy." See *Spring City Co. v. Commissioner*, 292 U.S. 182, 184-185 (1934). The exact amount need not be determined if all the facts upon which the calculation depends have become fixed. It is sufficient if the amount is knowable even if it is not known. *Jud Plumbing & Heating v. Commissioner*, 153 F.2d at 684; *Dally v. Commissioner*, 227 F.2d 724, 726-727 (9th Cir. 1955), affg. 20 T.C. 894 (1953), cert. denied 351 U.S. 908 (1956).

In the instant case all the relevant facts were fixed and "knowable" as of the end of the April accounting period. True, Columbia, and not petitioners, possessed the data necessary for calculation of the amount owed. However, there is no evidence that on May 23, 1970, Raybert was incapable of obtaining an

estimate of the amount due for the April accounting period.[10] Petitioners were aware of the existence of Columbia's obligation, unlike the taxpayer in *Camilla Cotton Oil Co.,* 31 T.C. 560 (1958), but made no attempt to secure an estimate of the amount owed. Cf. *George K. Herman Chevrolet, Inc.,* 39 T.C. 846, 850 (1963). Under such circumstances, we think the statement No. 9 payment was properly includable in Raybert's final tax year.

(b) *"Easy Rider" statement No. 10 and "The Monkees" annual statement.*—The precedents cited above dictate a different result with respect to the other disputed payments—the "Easy Rider" statement No. 10 payment and "The Monkees" annual payment. In both cases, Raybert had no fixed determinable right to an ascertainable amount of income at the time of its liquidation.

First, as a matter of contract, Raybert's rights had not fully ripened. See *Schlude v. Commissioner,* 372 U.S. 128 (1963). As explained above, Raybert's legal right to payments depended upon the outcome of each accounting period. By the terms of the contracts between the parties, Raybert's right to income became fixed only if the transaction during the entire accounting period yielded "net proceeds." Thus, prior to the close of the accounting period Raybert had no legal right to any payment whatsoever. In short, nothing was due and owing Raybert on these statements on the date of liquidation. *Williamson v. United States,* 292 F.2d at 529; *Telephone Directory Advertising Co. v. United States,* 135 Ct. Cl. 670, 677-678, 142 F.Supp. 884, 888 (1956).

As a factual matter, the existence of net proceeds was subject to significant contingencies. The amount of such net proceeds ultimately realized depended upon Raybert's share of the box office proceeds realized by the exhibitors as well as the amounts of expenditures incurred by Columbia. Until the expiration of the relevant accounting period, there were many contingencies that could alter or erase any net proceeds Raybert might have expected to receive. For example, Columbia had complete discretion to incur expenses for advertising, prints, or other permissible purposes, which could reduce or entirely eliminate any net proceeds during a particular accounting period. Similarly, gross receipts could be affected by a wide variety of factors, such as the cancellation or renegotiation of exhibition agreements or

---

[10] The liquidation occurred on May 23, 1970, nearly 1 month after the close of the April accounting period. The statement was issued on June 19, 1970, and there is nothing in the record to indicate an earlier estimate was not possible.

unexpected competition with more popular films. These contingencies compel the conclusion that, at the time of its liquidation, Raybert had not "earned" any part of the income ultimately received under "Easy Rider" statement No. 10 and "The Monkees" annual statement for the year ended July 23, 1970. See, e.g., *Telephone Directory Advertising Co. v. United States, supra; United States v. Horschel,* 205 F.2d 646, 648 (9th Cir. 1953); *United Mercantile Agencies,* 34 T.C. 808, 817 (1960).

Respondent's proration of these payments not only ignores the agreement between Columbia and Raybert, but does not correspond to the reality of how the income was earned. Respondent's allocation rests on the facile assumption that the net proceeds were realized approximately on a ratable daily basis over the respective accounting periods. Respondent contends that, in the absence of a contrary showing by petitioners, this allocation constitutes a reasonable ascertainment of the amount earned by Raybert to the date of its liquidation. This assumption is wholly unrealistic. "Easy Rider" statement No. 10 reflects the net amount computed from receipts from no less than 24 foreign countries and expenditures falling into 17 broad categories. As noted above, Raybert's contract with Columbia anticipates that income will be derived from numerous methods of marketing the picture. Similarly, "The Monkees" statement for the taxable period ended July 23, 1970, shows domestic royalties from sales of 11 single records and 10 albums, plus royalties from 38 foreign countries, together with a wide variety of types of expenditures. The amounts ultimately received pursuant to the several statements varied widely—ranging from $375,113 to $949,635 on "Easy Rider" statements Nos. 4 through 7. Indeed, $164,040.48 was received on statement No. 9 and $854,248.32 on statement No. 10. To say that a ratable portion of the amounts ultimately received pursuant to these statements had been realized, i.e., "earned," when Raybert was liquidated would be pure conjecture. On this ground *George K. Herman Chevrolet, Inc., supra,* is clearly distinguishable.

### 2. *Adjustment of Amount Received for Transferee Liability*

In conjunction with the preceding arguments, petitioners contend that, if they are liable as transferees for any tax with respect to the "Easy Rider" and "The Monkees" payments, they

are entitled to have the value of the amount received as liquidation distribution from Raybert adjusted by the amount of such liability. They argue that if the payments were really earned by, and are taxable to the corporation, the value of the liquidation assets they received was less than the amount reported and that this fact should be reflected by a reduction of the gain they realized on Raybert's liquidation.

Respondent, citing *Roberta Pittman*, 14 T.C. 449, 451-452 (1950), and *Estate of Henry E. Mills*, 4 T.C. 820, 827-828 (1945), answers that petitioners are not entitled to the claimed adjustment in 1970. Rather, petitioners may deduct the taxes paid as a result of their transferee liabilities as a loss for the year in which such liabilities are paid.

On the authority of the cases cited by respondent as well as *Arrowsmith v. Commissioner*, 344 U.S. 6 (1952), and *James Armour, Inc.*, 43 T.C. 295, 312 (1964), all of which we find indistinguishable in principle, we agree with respondent and hold accordingly. Tax liabilities are computed on an annual basis. *Burnet v. Sanford & Brooks Co.*, 282 U.S. 359 (1931). Petitioners received the full amount of the distribution from Raybert in 1970, unreduced by any corporate taxes on the "Easy Rider" statement No. 9 payment. Petitioners may be entitled to a deduction for additional corporate taxes attributable to statement No. 9 as a loss in the year in which they are paid, but they are not entitled to the adjustment which they claim in their 1970 tax liability.

### 3. *Amortization of Raybert's Assets*

On their 1970 Federal income tax returns, petitioners reported and paid a capital gains tax on the difference between their cost basis in Raybert's stock and the value of the assets received in the liquidation. However, petitioners reported no income on their Federal income tax returns for the payments received under the distribution contracts during 1970. Petitioners argue that before any income can be realized they must first recover their basis in the contract rights.[11] Petitioners contend the use of this "cost-recovery" method is justified, because the nature of the investment is highly speculative and it is therefore uncertain

---

[11] The basis is a sum equal to the fair market value of the contract rights which was employed in computing the tax due from the shareholders (petitioners) upon liquidation of Raybert.

whether their investment will be recouped, citing *Burnet v. Logan*, 283 U.S. 404 (1931). In addition, petitioners assert that the method advocated by respondent distorts the income realized on the contracts.

In the notice of deficiency, respondent determined that the "income forecast" method of amortizing the contracts applies. Pursuant to this method an estimate of income to be derived from the contracts is calculated, and in each year petitioners may amortize that part of their basis which bears the same ratio to the total basis as the payments received in the year bear to the total estimated payments.

The controlling statute is section 167(a) which provides that there shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion of property held for the production of income. The term "property" includes intangible contract rights, and such rights are subject to a depreciation allowance. See *KIRO, Inc.*, 51 T.C. 155, 167 (1968); *David Hoffman*, 48 T.C. 176 (1967); see also *Computing & Software, Inc.*, 64 T.C. 223 (1975).

Respondent has recognized the difficulties associated with amortizing film contract rights in Rev. Rul. 60-358, 1960-2 C.B. 68. Because of the uneven flow of income earned by this type of property, and because the usefulness of such assets is best measured by the flow of income and not solely by the passage of time, respondent accepted the income forecast method as a method of amortization under section 167. See also Rev. Rul. 64-273, 1964-2 C.B. 62. This method, as employed in the instant case, results in a fair allocation of the basis of the asset to periods in which income is realized and gives petitioners a reasonable allowance for amortization. *Massey Motors, Inc. v. United States*, 364 U.S. 92 (1960).

Petitioners' argument is founded on the factual [12] premise that petitioners' investment in the contract rights was highly specula-

---

[12] As a matter of law, petitioners' reliance upon *Burnet v. Logan*, 283 U.S. 404 (1931); *Commissioner v. Liftin*, 317 F.2d 234 (4th Cir. 1963); *Willhoit v. Commissioner*, 308 F.2d 259 (9th Cir. 1962), is misplaced. As explained in *Inter-City Television Film Corp.*, 43 T.C. 270, 293 (1964), involving the applicability of the cost recovery method to film exhibition contract rights:

"Those cases [*Burnet v. Logan* and its progeny] were not concerned with proper methods of depreciation but with the proper time for reporting income, if any, from transactions so speculative in nature that the taxpayer is not reasonably certain of ever recovering his investment. The problems are different and we do not believe that the rationale of those cases has a ready application to the problem of a current method of depreciation. * * *"

tive and the income to be received not capable of sufficiently accurate estimation to permit the computation of a reasonable amortization allowance. Not only does the record lack real support for this assertion, but, to the contrary, the record is replete with evidence that petitioners were virtually certain to recover their bases in the contracts. We need only list these facts:

(1) Petitioners valued the contracts as of the date of liquidation on the basis of an estimate of future income and paid a tax based thereon. Having ascertained a fair market value for this purpose, it is too late to argue that such predictions are impossible or unreliable. See *Waring v. Commissioner*, 412 F.2d 800, 801 (3d Cir. 1969).

(2) Joseph A. Fischer, financial vice president and treasurer of Columbia, testified that estimates of future income from films are often compiled by the distributor, made a part of its records, and relied upon for general business planning purposes and for distribution decisions with respect to specific films.

Petitioners also suggest that the income forecast method results in distortions of income. However, that method allocates the basis to the years the asset earns income and results in a substantially accurate apportionment of the amortization of petitioners' basis. If the estimates prove to be inaccurate, adjustments can be made, thus correcting any possible distortions of income.

Petitioners also argue that, while they were *required* to value the contracts on liquidation according to the best data available in order to pay a tax thereon, that value, based on future earnings, may not necessarily be an accurate estimate for amortization purposes. Therefore, the argument goes, valuation for amortization purposes should not be required. It cannot be gainsaid that valuation for liquidation purposes was required. However, estimation is no less necessary under the tax law for amortization purposes. "[P]rediction is the very essence of depreciation accounting," *Massey Motors, Inc. v. United States*, 364 U.S. at 105, and the difficulty of prediction does not render it unnecessary. *Inter-City Television Film Corp.*, 43 T.C. 270, 292 (1964).

To reflect the foregoing,

*Decisions will be entered under Rule 155.*