ESTATE OF HARLAN O'LEARY, ELOICE B. O'LEARY, JOSEPH LEE O'LEARY, GARY PATRICK O'LEARY, AND DONNA DARLENE O'LEARY, EXECUTORS, AND ELOICE O'LEARY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of O'Leary v. Commissioner
Docket No. 6136-84.
United States Tax Court
T.C. Memo 1986-212; 1986 Tax Ct. Memo LEXIS 398; 51 T.C.M. (CCH) 1073; T.C.M. (RIA) 86212; May 27, 1986. Towner Leeper, for the petitioners. Marion S. Friedman, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: For the calendar years 1978 and 1979, respondent determined deficiencies in the joint income tax liability of Harlan O'Leary and Eloice O'Leary in the respective amounts of $49,794.80 and $73,084.57. After concessions, the issues which we must resolve are: (1) Whether, under the so-called cost-recovery method of reporting gain from the sale of property, petitioners are entitled to charge both periodic payments of interest and principal against their unrecovered cost basis, deferring any reporting of income until all such cost basis has been recovered; and (2) Whether, if respondent is sustained on this issue, adjustments to petitioners' income in the years before us should be made under the provisions of section 481, [1] and the amount thereof. *401 Some of the facts herein were stipulated, and such stipulations, together with accompaying exhibits, are incorporated herein and made a part hereof. FINDINGS OF FACT Harlan O'Leary and Eloice O'Leary were husband and wife and filed joint income tax returns on the cash basis for the calendar years 1978 and 1979. At the time the petition herein was filed, they were residents of El Paso, Texas. Subsequent to trial herein, petitioner Harlan O'Leary (hereinafter "Harlan") died, and his estate, through his duly qualified executors, was substituted as a party petitioner. During the years in issue, and for a number of years prior and subsequent thereto, Harlan had been in the business of acquiring unimproved desert land, platting (but not surveying) it and selling lots to the general public under contracts of sale payable in monthly installments, with Harlan retaining title to the lots until and required payments were made. The land was entirely unimproved, containing no paving, curbing, gutters, electricity, water or sewerage, and Harlan made no improvements to the land other than fencing. Possession of a lot was retained by Harlan until all payments due under the outstanding *402 contract of sale were received, and a deed to the property delivered to the buyer. Prior to 1976, it was not Harlan's ordinary business practice to either state in a contract of sale, or to collect, a "finance charge," although a few exceptions to this general practice occurred. Starting sometime in 1976, however, Harlan began to set out a "finance charge" in the contracts of sale and began to collect the amount of the finance charge in virtually every contract. Such "finance charge," in fact, was interest, and was computed on the remaining principal balance of the purchase obligation, after crediting thereto the portion of each level monthly payment which was attributable to a payment on principal. All the sales contracts for individual lots entered into by Harlan and the respective purchasers contained the following, inter alia: a. A provision that failure to comply with the payment provisions would, at the option of the seller, mature the obligation or cancel the contract. In the event of cancellation by the seller, any sum of money previously paid by the purchaser would be considered as rent and liquidated damages. b. Each contract contained the following provision: *403 The "TOTAL PAYMENTS" shown is payable in       consecutive monthly installments of $     each, beginning on      , and a like installment on the     day of each month thereafter until fully paid, principal and interest. Monthly payments include principal and interest. [The appropriate number of monthly payments, the dollar amount, and the effective dates were inserted in each contract.] c. All the sales contracts were payable over a period of years, varying from 13 to 20. d. Each sale contract form provided for the disclosure of the following information: Cash Price
$
Down Payment
$
Amount Financed
$
FINANCE CHARGE
$
Total of Payments
Deferred Payments Price
$
ANNUAL PERCENTAGE RATE
Nearly all of the sales contracts involved in this case were completely filled out with respect to the above information with respect to the terms of the individual sale. A few of the sales contracts contained no entries on the lines for "FINANCE CHARGE" and/or "Deferred Payments Price." All contracts in issue in this case, however, contained entries on the lines "Amount Financed" and "ANNUAL PERCENTAGE RATE," even where other items of information *404 were missing, and in all cases, interest was actually charged on the deferred portion of the payment price at an annual rate of 5 percent or more. Actual collection of the individual purchaser's monthly payment was performed by the real estate collection department at various banks. When the collecting bank received a purchaser's payment, a collection receipt was prepared which showed, among other things, the payment date, payment amount, amount applied to principal, amount applied to interest, amounts applied to various bank charges and finally, the net amount deposited in Harlan's bank account. Ledger cards were maintained in Harlan's office for each sale contract, showing the name and address of the purchaser, the date of the contract, the amount of the monthly payment, and the applicable percentage rate. Based upon information received from the collecting bank, Harlan's office made entries on its ledger cards, showing the amount of interest and the amount of principal in each level monthly payment, with the principal portion only being credited to the remaining principal balance on the purchase contract. Said principal balance was shown as decreasing monthly, as the principal *405 portion of each monthly payment was applied to it. As the remaining principal balance on the purchase contract decreased, the amount of each monthly payment attributable to interest also decreased, and the amount attributable to principal payments correspondingly increased. For purposes of reporting in their income tax returns, petitioners applied all payments received under the sales contracts, both principal and interest, to reduce their adjusted cost basis in the particular property being sold. When the total of such monthly payments exceeded the cost basis of the property, the excess was reported as income. The only exception to the foregoing statement is that in any year in which the buyer [2] canceled his contract, the total amount collected from such buyer, less any amounts previously reported as income, would be reported as ordinary income from cancellation of the contract. Upon audit, respondent determined that the "Finance Charge" was in reality interest income which should be reported in the year collected, whether or not the cost of the *406 property sold had been recovered. The following facts are found as material and relevant with respect to petitioners' income from the "finance charges," i.e. interest, received by them in 1978 and 1979 on account of the land sale contracts here in issue: 1979
1979
Total "Finance Charge," i.e.
interest, collected
$134,874.61
$129,543.64
"Finance Charges," i.e. interest,
already reported by petitioners
from canceled contracts
9,466.50
16,896.35
"Finance Charges," i.e. interest,
already reported by petitioners
with respect to contracts where
recovery exceeded basis under
petitioners' method of accounting,
and principal which was reported by
petitioners as in excess of basis,
but which is not in excess of basis
if 1978 and 1979 "Finance Charges"
are reported in the year of receipt
in lieu of being applied to cost
basis of property
3,088.09
11,545.34
Prior to 1978, petitioners omitted from income interest in the amount of $76,514.79, which was instead applied to reduce their cost basis in land sales contracts. Under petitioners' method of accounting, the unrecovered costs in the land contracts were $718,218.84 on December 31, 1977. If said *407 omitted interest income were not applied to reduce cost basis, said unrecovered cost basis at December 31, 1977, would be $794,733.63. The method of accounting employed by petitioners in their 1978 and 1979 tax returns did not clearly reflect their income. OPINION I. In determining the amount of gain or loss from the sale of property, the general rule is that such amount shall be determined by a comparison of the "amount realized" from the sale with the taxpayers' adjusted basis, sec. 1001(a), and the "amount realized" from the sale "shall be the sum of any money received plus the fair market value of the property (other than money) received." Sec. 1001(b). In addition to this general rule, however, section 1001(d) provides as follows: (d) Installment Sales.--Nothing in this section shall be construed to prevent (in the case of property sold under contract providing for payment in installments) the taxation of that portion of any installment payment representing gain or profit in the year *408 in which such payment is received. Expanding further upon the alternative provided by section 1001(d) to the general rule of sections 1001(a) and (b), -- that is, the permissible use of the installment method of reporting -- respondent's regulations provide: Other accounting methods. If the vendor chooses as a matter of consistent practice to return the income from installment sales on an accrual method or on the cash receipts and disbursements method, such a course is permissible. [Sec. 1.453-1(e), Income Tax Regs.] As a subvariant on the permissible way to report sales of property on the installment basis, respondent's regulations further provide: (a) Value of obligations. (1) In transactions included in paragraph (b)(2) of § 1.453-4, that is, sales of real property involving deferred payments * * *, the obligations of the purchaser received by the vendor are to be considered as an amount realized to the extent of their fair market value in ascertaining the *409 profit or loss from the transaction. * * * (2) If the obligations received by the vendor have no fair market value, the payments in cash or other property having a fair market value shall be applied against and reduce the basis of the property sold and, if in excess of such basis, shall be taxable to the extent of the excess. Gain or loss is realized when the obligations are disposed of or satisfied, the amount thereof being the difference between the reduced basis as provided in the preceding sentence and the amount realized therefor. Only in rare and extraordinary cases does property have no fair market value. [Sec. 1.453-6(a), Income Tax Regs.] The last-quoted regulation is an embodiment of the principle enunciated by the Supreme Court many years ago in the case of Burnet v. Logan,283 U.S. 404 (1931), where the Court held that in a sale of property, where the purchaser's obligation was neither cash nor capable of being valued, the seller was entitled to recover his cost basis from payments as received, before being required to report a gain on the transaction, i.e. the "open transaction" doctrine. This method of accounting *410 for tax purposes, which has come to be known as the cost-recovery or deferred-payment method, has been applied in later cases, see Ennis v. Commissioner,17 T.C. 465 (1951). Later cases, however, have made it clear that even though the purchaser's obligation received by the seller may not be in the form of a negotiable note or other type of property which is freely traded and can be valued at its full face value, nevertheless if a fair market value for such obligation can be established, it must be considered as the equivalent of cash received to the extent thereof, so that use of the cost-recovery method is not permitted, and gain or loss on the sale must be reported to the extent of the fair market value of the obligation received. See Warren Jones Co. v. Commissioner,60 T.C. 663 (1973), revd. 524 F.2d 788, 793-794 (9th Cir. 1975); Heller Trust v. Commissioner,T.C. Memo. 1965-302, T.C. Memo. 1966-121, revd. on other issues 382 F.2d 675 (9th Cir. 1967). In the instant case, respondent concedes that petitioners *411 were entitled to use the cost-recovery method in accounting for gain or loss from the executory sales contracts which Harlan entered into for the sale of his desert lots. Respondent, however, contends that the cost-recovery method applies only with respect to periodic payments of principal received, and that the interest portion of each periodic payment must be currently reported as ordinary interest income. Petitioners, to the contrary, contend that the cost-recovery method entitles them to apply both the interest and principal portions of each monthly payment, as received, against their remaining cost basis, and that they are not obliged to report any gain from the sale of the desert lots involved here until such time as their remaining cost bases are exhausted from the application of principal and interest payments. We agree with respondent. Petitioners cite a number of cases holding that the holder of a debt obligation of unascertainable value is entitled to apply all his payments, both principal and interest, against his cost basis until such cost basis is fully recovered, before reporting *412 any income: Willhoit v. Commissioner,308 F.2d 259 (9th Cir. 1962), revg. T.C. Memo. 1958-207; Liftin v. Commissioner,36 T.C. 909 (1961), affd. 317 F.2d 234 (4th Cir. 1963); Underhill v. Commissioner,45 T.C. 489 (1966); Phillips v. Frank,295 F.2d 629 (9th Cir. 1961). All such cases, however, are distinguishable from the case at bar. In each of them, the taxpayer who was the holder of the debt obligation was not the original seller of the property, but had purchased the installment obligation from the original creditor at a discount, and as a speculative investment. He accordingly had a cost basis in the debt obligation itself, in an amount equal to the price which he had paid for it. Since the value of the obligation was speculative, and it could not be determined with certainty whether all the stated obligations would be paid, it was held in each of those cases that the taxpayer/purchaser was entitled to recover his entire cost basis in the purchased obligation, whether through interest or principal payments, before being required to report any income. In this situation, the *413 distinction between principal and interest payments in the hands of such third party purchaser was irrelevant. In the case at bar, however, the situation is entirely different. Here, petitioners had no cost basis in the interest payments which they received, and such payments were fully reportable in the year of receipt. They did have a cost basis in the properties which were being sold, and under the cost-recovery method of accounting, they were entitled to apply the principal portions of each monthly payment against those various cost bases, until they were fully absorbed. Under their alleged method of accounting, petitioners unilaterally attempted to convert interest payments into principal payments, crediting the full amount of each monthly payment against their remaining cost bases, and thus deferring the reporting of any income until such cost bases were fully recovered. This they may not do. The contracts of sale which Harlan entered into with his various purchasers made it perfectly clear that each monthly periodic payment was composed of two elements -- principal and interest -- and that only the principal portion of each monthly payment was to be credited against the *414 buyer's remaining obligation under the purchase contract. Both the bank collection agents' accounts, as well as the internal accounts maintained by Harlan, were consistent with this basis. Where periodic payments consisting of both principal and interest elements are received, the general rule, known as the "United States Rule," is that such periodic payments are applied first to interest, with any remaining amount being applied to principal, absent any agreement of the parties to the contrary, Story v. Livingston,38 U.S. (13 Pet.) 359, 370-374 (1839); Acker v. Provident National Bank,373 F.Supp. 56, 69 (E.D. Pa. 1974), revd. on another issue 512 F.2d 729 (3d Cir. 1975); Agostini v. Colonial Trust Co.,28 Del. Ch. 30, 36 A.2d 33, 39 (1944). It is clearly the rule of law in Texas, where these contracts were entered into. Bradford v. Thompson,460 S.W. 2d 932, 938 (Tex. Civ. App. 1970), affd. in part and revd. in part on other grounds 470 S.W. 2d 633 (Tex. 1971), cert. denied 405 U.S. 955 (1970); *415 Straus v. Brooks,126 S.W. 2d 542 (Tex. Civ. App. 1939), revd. on other grounds 136 Tex. 141, 148 S.W. 2d 393 (Tex. Comm. App. 1941). The same rule has been applied in this Court. Maxine Development Co., Inc. v. Commissioner,T.C. Memo. 1963-300. It is clear in this case that the parties to the deferred sale contracts intended the general rule regarding application of principal and interest payments to apply. "That which is in fact interest cannot be made principal simply by calling it such." J.I. Case Co. v. Laubhan,64 S.W. 2d 1079, 1080 (Tex. Civ. App. 1933). In Rodney v. Commissioner,53 T.C. 287 (1969), the taxpayer sold property under an interest bearing contract calling for fixed monthly payments. He also made loans evidenced by interest bearing notes with fixed monthly payments. Consistent with the terms of the obligations, taxpayer's collection agents allocated each payment between principal and interest. The taxpayer claimed that, because of the speculative nature of the obligations received, he was entitled to recover his full cost bases therein through the monthly payments of principal *416 and interest before being required to report any gain from the transactions. Respondent, while apparently not contesting the taxpayer's right to recover his cost bases through principal payments as received -- the cost-recovery method -- contended that the interest portion of each monthly payment was fully reportable as received. In sustaining respondent on this issue, we said: A debtor and creditor have the right to earmark the amount of a deferred payment between principal and interest and where such an allocation is made the interest income of the creditor is the amount so agreed upon. Huntington-Redondo Co.,36 B.T.A. 116 (1937). Where there is no allocation made by the parties the general rule is that the amount shall first be applied to liquidation of the interest due before any part is applied to the principal. Helvering v. Drier,79 F.2d 501, 503 (C.A. 4, 1935), affirming a Memorandum Opinion of this Court. The conditional-sales contract specifically provided for interest. The escrow statement for escrow No. 15194 submitted by *417 the Spokane and Eastern Branch of the Seattle First National Bank indicates that as each payment was made the bank, acting as agent for the parties, allocated such payment between interest and principal. The parties also agreed to the 6 1/2-percent interest rate on the notes involved in the loan transactions. Each monthly payment, by the very terms of the notes, including the interest due at the time the installment was paid. The collecting agent also made allocations between principal and interest as to each payment received. We therefore hold that petitioner is not entitled to recover his entire basis in the property sold under the October contract or to recover his capital under the notes before allocating any of the payments received pursuant thereto to interest but must instead allocate each payment as received between interest and principal, with interest being computed at 6 1/2 percent per year. [53 T.C. at 312-313.] We likewise hold here that the cost-recovery method, with respect to taxpayers such as the instant petitioners, does not include the right to convert interest payments into principal payments; that the method of accounting used by petitioners *418 did not clearly reflect their income; and that respondent was therefore authorized to change petitioners' method of accounting to a proper cost-recovery method, and to require that periodic payments of interest under the deferred sale contracts be currently reported as income. Sec. 446(b). II. The parties have stipulated that if we should hold for respondent on the first issue herein, which we have, then it should be considered that respondent's adjustment on this issue constituted a change of accounting method within the meaning of section 481, and that the necessary recomputation of petitioners' income and tax should be done under the provisions and subject to the limitations of that section. Although such stipulated of the parties relates to matters of law and not to matters of fact, and is therefore not binding on the Court, King v. United States,641 F.2d 253 (5th Cir. 1981), nevertheless we agree that what respondent did here amounts to a change of accounting method, see section 1.446-1(e)(2)(ii), Income Tax Regs., and accordingly the provisions of section 481 are applicable. See Electric & Neon, Inc. v. Commissioner,56 T.C. 1324, 1336-1337 (1971), *419 affd. without opinion 496 F.2d 876 (5th Cir. 1974); Graff Chevrolet Company v. Campbell,343 F.2d 568 (5th Cir. 1965); Peoples Bank & Trust Co. v. Commissioner,50 T.C. 750 (1968), affd. 415 F.2d 1341 (7th Cir. 1969). We must now consider how such provisions should be applied. Section 481(a) provides as follows: (a) General Rule.--In computing the taxpayer's taxable income for any taxable year (referred to in this section as the "year of the change")-- (1) if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then (2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply unless the adjustment is attributable to a change in the method of accounting initiated by *420 the taxpayer. The above subsection applies to any change in method of accounting where the year of the change is a taxable year beginning after December 31, 1953, and ending after August 16, 1954, and thus applies to all relevant years herein. Pub. L. 85-866, sec. 29(a), 72 Stat. 1606, 1626. It is clear that the recomputation of petitioners' income for the years 1978 and 1979 -- the years before us -- must be done under the cost-recovery method of accounting, as determined by respondent, which is different from the method used by petitioners for their preceding years, beginning with 1976, when Harlan first began to charge interest on his deferred sales contracts. The provisions of section 481(a)(1) are thus satisfied. Under the provisions of section 481(a)(2), there must therefore "be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, * * *." In the context of this case, the adjustments required by section 481(a)(2) are the following: a) The interest income actually collected in years prior to 1978, but not reported in those years, should be brought into *421 income in 1978. The parties have stipulated that such amount was $76,514.79. b) The same amount, which petitioners used to reduce their cost bases prior to 1978, should be restored to basis at December 31, 1977.The parties have stipulated that such adjustment would produce a total remaining cost basis of $794,733.63. c) To the extent that petitioners' improper method of charging interest against cost basis caused them to report gain from sales of lots prior to 1978, such improperly reported gains should be subtracted from 1978 income. All such adjustments are to be made to petitioners' income for 1978, the first year in which the proper cost-recovery method is used, which is the "year of the change" under section 481. Electric & Neon, Inc. v. Commissioner,supra.
Such adjustments having been made, petitioners' income for 1978 and 1979 is to be recomputed under the cost-recovery method, including the following: d) All interest collected in each respective year is to be included in income for such year. The parties have stipulated that such amounts are $134,874.61 for 1978 and $129,543.64 for 1979. e) Gain from the sale of lots in 1978 *422 and 1979 is to be recomputed under the proper cost-recovery basis by reducing the respective cost bases, as corrected to December 31, 1977, under section 481(a)(2), only by the periodic payments of principal received in each year with respect to each lot, with no gain to be reported until each such basis is exhausted. In recomputing the tax hereunder, the limitations of section 481(b)(1)(2) and/or (3) shall be applied, as appropriate. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
2. So stipulated by the parties. Consistent with the terms of the contract, however, "buyer" should probably be "seller."↩